N96CstoA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4          v.                23 Cr. 430 (KPF)

5   ROMAN STORM,

6             Defendant.

7   ------------------------------x

8                             New York, N.Y.
                             September 6, 2023
9                             11:30 a.m.

10

   Before:

11
                 HON. KATHERINE POLK FAILLA,

12
                             District Judge

13
                   APPEARANCES

14
   DAMIAN WILLIAMS,
15       United States Attorney for the
       Southern District of New York
16   BY:  THANE REHN
       Assistant United States Attorney
17
   BRIAN KLEIN
18   KERI CURTIS AXEL
       Attorneys for Defendant
19
   ALSO PRESENT:
20   Jessica Aguilar-Adan, United States Pretrial Services Officer
   Special Agent Hailey Richins, FBI
21   Kevin Mosley, Department of Justice

22

23

24

25

1            (case called)

2            MR. REHN:  Good morning, your Honor.  Thane Rehn for

3    the United States.  I'm joined today at counsel's table by

4    Kevin Mosley, who is a trial attorney with the Department of

5    Justice's Money Laundering and Asset Recovery section.  We

6    expect he will be filing a notice of appearance in this case

7    shortly.  I'm also joined by Hailey Richins, who is a special

8    agent with the Federal Bureau of Investigation.  And also at

9    government counsel's table is Jessica Aguilar, who is a United

10   States Pretrial Services officer.

11           THE COURT:  Thank you very much.

12           Sir.

13           MR. KLEIN:  Good morning, your Honor.  Brian Klein

14   with the Waymaker law firm.  With me is my colleague Kerry

15   Curtis Axel.  She is not admitted yet.  She will be submitting

16   a *pro hac vice* application shortly and I will be filing a

17   notice of appearance shortly.

18           THE COURT:  Right.  I didn't think there was anybody

19   on the docket, but that will all be remedied very soon.  Thank

20   you very much.

21           And Mr. Storm, good morning to you, sir.

22           THE DEFENDANT:  Good morning.

23           MR. KLEIN:  He's here, out of custody.

24           THE COURT:  Please be seated.  Thank you.

25           Mr. Klein, should I be directing my questions to you

1    or to Ms. Axel this morning?

2            MR. KLEIN:  To me is fine, your Honor.

3            THE COURT:  Thank you.

4            Sir, do you have a copy of the indictment in this

5    case?

6            THE DEFENDANT:  Yes.

7            THE COURT:  I see that's now in front of your client.

8    Thank you.

9            Mr. Klein, can I please confirm that your client was

10   presented in Washington, but has not been arraigned on this

11   document?

12           MR. KLEIN:  Yes, your Honor.

13           THE COURT:  Thank you.  I'll get to that momentarily.

14           Mr. Rehn, before I do that, I will speak with you, as

15   I do with everyone at the first conference, about amendments to

16   Federal Rule of Criminal Procedure 5(f).

17           Sir, I imagine you've seen written orders on dockets

18   in cases in this district regarding the government's

19   obligations under that rule; is that correct?

20           MR. REHN:  Yes, your Honor.

21           THE COURT:  May I please confirm that you and the

22   other members of the prosecution team are aware of your

23   obligations under Federal Rule of Criminal Procedure 5(f), that

24   you have complied with them to date, and that you will continue

25   to comply with them and are aware of the consequences of

N96CstoA

1  noncompliance?

2              MR. REHN:  Yes, your Honor.

3              THE COURT:  Thank you.  I'll be issuing an order later

4  today on that front.  Thank you.

5              Mr. Rehn, just before I turn to Mr. Storm and his

6  arraignment on this matter, is there anything I should know

7  from you?  I can ask you some background questions in a moment,

8  but is there anything I must do before the arraignment?

9              MR. REHN:  I don't believe so, your Honor.  We expect

10 we will also ask the Court to be setting some conditions of

11 release today, and we'll provide a preview of the discovery and

12 how we anticipate the case going forward, but I don't think

13 there's anything in need before the arraignment.

14             THE COURT:  Thank you very much.

15             Mr. Klein may I address your client directly, sir?

16             MR. KLEIN:  Yes, your Honor.

17             THE COURT:  Thank you.

18             Mr. Storm, I've been advised -- and I'll let you sit

19 down, sir.  I do appreciate the respect.  I'll just let you

20 know that sometimes the acoustics in this courtroom aren't

21 great, so I'm fine if you're able to remain seated.

22             Sir, I've been advised by your attorney that he's

23 given to you and that you have in front of you a copy of the

24 indictment in this case; is that correct, sir?

25             THE DEFENDANT:  Yes, that is correct.

1          THE COURT:  Have you had an opportunity to read the

2     document, sir?

3          THE DEFENDANT:  Yes, I did.

4          THE COURT:  Without giving me the details of your

5     communications, have you had a full opportunity to discuss this

6     document with your attorneys?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  Would you like me to read this document

9     into the record of the court or do you waive its public

10    reading?

11         THE DEFENDANT:  No.

12         THE COURT:  I'll take the "no" as a waiver, sir; is

13    that correct?

14         THE DEFENDANT:  Correct.

15         THE COURT:  I'm watching the head nods at the back

16    table, so I appreciate knowing that.

17         Sir, how do you plead?

18         THE DEFENDANT:  Not guilty.

19         THE COURT:  We will record that plea.  Thank you very

20    much.

21         Mr. Rehn, let me hear from you, please, about

22    contemplated discovery in this case and if there is or has been

23    discussions with the defense team about a schedule for its

24    production.

25         MR. REHN:  Yes, your Honor.

1          Just first by way of background about the case, this

2     is a case alleging that the defendant was involved in

3     developing or operating and promoting a cryptocurrency mixing

4     service called the Tornado Cash service.  So in its essence,

5     the way the Tornado Cash service worked is that it accepted

6     customer deposits, commingled them with the deposits of many

7     other customers, and then transferred to new cryptocurrency

8     addresses designated by its customers.

9          As alleged in the indictment, the Tornado Cash service

10    was used to launder large volumes of criminal proceeds with the

11    knowledge and participation of the defendant.  It was also used

12    to facilitate transactions in blocked property that was

13    controlled by a North Korean cyber hacking group called the

14    Lazarus Group, also with the knowledge and participation of the

15    defendant.  The Tornado Cash service operated as an unlicensed

16    money transmitting business because it engaged in the transfer

17    of funds for the public.  That's sort of the core of what the

18    indictment alleges, obviously in much more detail in the actual

19    charging instrument.

20         With respect to discovery in this case, we've had some

21    discussions with defense counsel in the first instance about a

22    protective order.  We've had a couple of drafts back and forth

23    and I think just before today's conference, we reached

24    agreement on a protective order, which we will be hopefully

25    proposing to the Court on the docket today.  As soon as that

1    protective order is entered, the government anticipates making

2    an initial discovery production that will include search

3    warrant returns from various digital providers, including

4    Google, Discord, GitHub, and others.  It will include the

5    search warrants themselves so the defense can review those.

6    There are also some search warrants of devices, both devices in

7    the defendant's possession and also some warrants in the course

8    of the investigation of devices in other people's possession.

9    That review is ongoing, so we are anticipating a rolling

10   production of documents identified as responsive to those

11   search warrants, but hopefully it will be completed in not too

12   long from now.  We're working diligently to complete that.

13            THE COURT:  Sir, if I could ask you to pause for a

14   moment.  When you talk about a search, the devices that have

15   been seized pursuant to search warrants, are these devices that

16   you have been able to image or are there issues with

17   encryption?  And if I'm not supposed to know that stuff, don't

18   tell me.  I'm not trying to compromise the investigation, I'm

19   just trying to figure out whether I can expect that these

20   devices will be imaged and their contents produced to the

21   defense or whether this is a situation where you have devices

22   and are not sure today whether you will be able to image them

23   or not.

24            MR. REHN:  There are devices in both categories, your

25   Honor.  There are certainly a number of devices the government

1    has been able to image and is well underway in reviewing for

2    responsive materials.  There are also devices that the

3    government is attempting to access that may be encrypted.

4             THE COURT:  I understand.  Thank you, sir.  And please

5    continue.

6             MR. REHN:  A second category of materials are

7    materials that the government received from Deutsche law

8    enforcement authorities pursuant to a mutual legal assistance

9    treaty request.  That includes, I think, primarily materials

10   that were recovered from a cellphone used by an individual

11   who's referred to in the indictment as CC-1, which we'll be

12   producing in this initial round of production.  Many of those

13   materials were originally in Russian and they've been

14   translated by the government and we will be producing those

15   translations, as well.

16            And then the third category is subpoena returns, which

17   are also quite voluminous.  It includes financial records,

18   records of access to various websites, IP logs, things of that

19   nature.  All three of these categories are reasonably

20   voluminous.  We're talking about, in total, multiple terabytes

21   of data that will be produced with hopefully a large initial

22   production happening shortly after the Court enters the

23   protective order.  And as I mentioned before, some additional

24   follow-on productions on a rolling basis as those materials

25   become available to the government.

1          THE COURT:  Sir, I believe the indictment charges a

2     codefendant.  Should I expect to see this codefendant?

3          MR. REHN:  Your Honor, the codefendant is believed to

4     be located overseas and has not been arrested at this time, he

5     remains a fugitive, so there's no concrete schedule for when we

6     might expect to see him.

7          THE COURT:  I see.  And so I should not be planning a

8     schedule that would include his arrival soon in this district?

9          MR. REHN:  That's correct, your Honor.  We anticipate

10    this case moving forward with respect to the defendant who's in

11    the country who's been apprehended.  If and when there's an

12    arrest, obviously we'll notify the Court and decide how that

13    affects the schedule in this case.

14         THE COURT:  Sir, are there postarrest statements or

15    other statements from Mr. Storm that require production?

16         MR. REHN:  The defendant participated in a proffer

17    with the government and we will be producing our notes of that

18    proffer as part of the initial discovery.  There was not a

19    postarrest statement because the defendant already had counsel.

20         THE COURT:  Are there victims who require notification

21    under the Crime Victims' Rights Act?

22         MR. REHN:  There are victims of the hacks and other

23    cyber crimes that are alleged in the indictment, some of whom

24    the government has been in contact with.  So we will make

25    efforts to create a list of those victims and reach out to

1    them.  There's probably more victims than we can reasonably

2    even identify, but at least for the ones that we can identify,

3    we will do so.

4              THE COURT:  Your office still has a victim witness

5    coordinator who can handle that?

6              MR. REHN:  Yes, your Honor.

7              THE COURT:  Okay.  Thank you.

8              Sir, are there other things I should know?

9              MR. REHN:  The only other thing I would flag with

10   respect to discovery, just for the Court's information, there

11   are some classified materials at issue.  It's our current view

12   that it's unlikely any of those classified materials will be

13   subject to discovery, but the government plans to file a

14   Section 2 motion for a pretrial conference under the Classified

15   Information Procedures Act where we will provide more

16   information to the Court on an *ex parte* basis and ultimately

17   likely submit a brief to the Court regarding those materials.

18             THE COURT:  Do you contemplate superseding charging

19   instruments with respect to Mr. Storm or otherwise?

20             MR. REHN:  It's too early to say, your Honor.  I think

21   it's a possibility, but there's no concrete plans at this

22   moment.

23             THE COURT:  And just going back for a moment to the

24   CIPA Section 2 conference that you were mentioning, is there a

25   timeframe for that?  Are you thinking in the next 30 days or

1    so?

2                MR. REHN:  We can file our motion within the next

3    30 days if the Court would like that, and we can schedule that

4    initial hearing for the Court.

5                THE COURT:  Okay.  Yes.

6                MR. REHN:  We anticipate that we'll be able to address

7    the CIPA issues in a schedule that doesn't interfere with the

8    overall schedule in the case.

9                THE COURT:  You were anticipating my concern.

10               All right.  Other things I should know, sir?

11               MR. REHN:  With respect to sort of discovery, I think

12   that pretty much covers it.

13               THE COURT:  We'll talk about conditions of release in

14   a moment.  Thank you.

15               Mr. Klein, I would understand, sir, if at this time

16   there was nothing that you wanted to add or nothing you wanted

17   to tell me about, but if there is something I should know, for

18   example, if you're certain that there's a motion coming down

19   the pike or you think there is an issue with the classified

20   discovery or anything else, I appreciate hearing about it now.

21               MR. KLEIN:  Your Honor, just to say that we think the

22   government got it wrong here, not surprisingly, and our client

23   has cooperated with the government since he learned about the

24   investigation late last year, including being interviewed.  We

25   share your concern about the CIPA issue not slowing things

1    down, but we do want to receive discovery.  We understand we

2    may set a date out to come back and talk about motions and

3    other things, but we don't have anything concrete right now.

4            THE COURT:  All right.  Thank you, sir.

5            Mr. Klein, there were discussions about a protective

6    order and the government recited its belief that the parties

7    may be close to agreement.  Is that your understanding, as

8    well?

9            MR. KLEIN:  It is, your Honor, that was correct.

10   We've talked and we think we've got an agreement.

11           THE COURT:  Thank you so much.

12           Mr. Klein, do you have a sense of how much time you

13   would like, recognizing it would take a little bit of time to

14   begin the initial production of discovery?  It was suggested to

15   my deputy a schedule of maybe coming back about 90 days.  Is

16   that workable for you and your client?

17           MR. KLEIN:  That makes sense to us, your Honor.  I

18   think the date of November 30th at 3:30 was discussed.

19           THE COURT:  Okay.  Great.

20           Have you had an opportunity, you and your cocounsel,

21   to speak with your client about the Speedy Trial Act and

22   requests for exclusions under the Speedy Trial Act?  I ask

23   because I expect Mr. Rehn will be making such an application.

24   I don't want your client to be unaware of what's happening.

25           MR. KLEIN:  We anticipated that, your Honor, and we

1    did speak to him and he is aware.

2           THE COURT:  Much appreciated.  Thank you.

3           So then let's do this:  We'll set the conference for

4    November 30th at 3:30 p.m.

5           Mr. Rehn, just lest I forget, I'm going to ask you now

6    to make your application, then I'll hear from the parties

7    regarding the possible conditions of release.  Thank you.

8           MR. REHN:  Yes, your Honor.  As we've just discussed,

9    the discovery in this case is reasonably voluminous and will

10   presumably take some time for the defense to review it, and in

11   order to allow the defense to review the discovery and

12   determine whether it will seek to make any motions in this

13   case, we would submit that it's in the interests of justice and

14   it outweighs the interests of the public and the defendant in a

15   speedy trial to exclude time until November 30th.

16          THE COURT:  Thank you.

17          Mr. Klein, does your client have a position with

18   respect to this request?

19          MR. KLEIN:  We don't object, your Honor.

20          THE COURT:  Thank you.

21          And may I address him directly, sir?

22          MR. KLEIN:  Yes, you may.

23          THE COURT:  Thank you.

24          Mr. Storm, you've heard us speaking about the Speedy

25   Trial Act and I understand from discussions with your attorney

1   that you've discussed this act, as well, and that you're

2   familiar with the terms that we're using.  I understand from

3   the government that they are making an application to exclude

4   time between today's conference and the next conference, which

5   is set for November 30th.  They've given me reasons why that

6   time should be excluded, and I do agree that it is appropriate

7   to exclude time between these two dates on the theory that it

8   is important for you to receive discovery in this case.  The

9   word "voluminous" has been given to me by the government

10  several times.  When I hear "terabytes," I do think of that as

11  voluminous.  So I want you and your attorneys to have an

12  opportunity to review this discovery, I want you to discuss

13  with them the options that you have available to you, and then

14  when we come back in November, my hope is that you'll be able

15  to tell me whether you'd like to file motions or do something

16  else.

17          So, for all of these reasons, sir, I'm making a

18  particular finding under the Speedy Trial Act, and the finding

19  that I'm making is that the ends of justice that are served by

20  excluding this time between today's date and November 30th

21  outweigh the interests that you in particular have and that the

22  public in general has in you getting to trial more quickly.

23  Again, sir, I do think it's important that you see the

24  discovery in this case and discuss it with your attorneys, and

25  so that's why I'm excluding time.

1        Do you understand what I've just said?

2        THE DEFENDANT:  Yes, I do, your Honor.

3        THE COURT:  Thank you, sir.

4        Let me then hear from the parties, and I guess,

5    Mr. Rehn, I'll begin with you regarding what conditions you've

6    agreed upon and what conditions perhaps you have not agreed

7    upon.  Thank you.

8        MR. REHN:  Yes, your Honor.  I think the parties are

9    in agreement on conditions of release.

10       THE COURT:  Okay.  There's no dispute.  That sounds

11   great.  Okay.  Go ahead.

12       MR. REHN:  So we've reviewed the original Pretrial

13   Services report, as well as the addendum that was produced in

14   this district, and there's a set of proposed conditions on I

15   believe page 3 of the pretrial report from this district, which

16   we largely agree with, but there's a couple of changes I would

17   note.

18       THE COURT:  Okay.

19       MR. REHN:  First off, Pretrial Services has

20   recommended that the defendant be released on a bond to be

21   co-signed by three financially responsible persons.

22       THE COURT:  Yes.

23       MR. REHN:  We would propose that the bond be

24   $2 million, and that the defendant be required to pledge his

25   residence as security for the bond, but that there only be one

1    cosigner to sign, and that the cosigner be ordered to sign by

2    September 15th.

3            THE COURT:  And that cosigner would be a financially

4    responsible person and not someone with moral suasion?

5            MR. REHN:  That's correct, your Honor, a financially

6    responsible cosigner, but not one who would be pledging any

7    additional property beyond --

8            THE COURT:  I understand.

9            Mr. Klein, you stood up, sir.

10           MR. KLEIN:  Yes, we are in agreement on that.

11           THE COURT:  Actually, Mr. Klein, if I could just, for

12   the spoiler alert, please, sir, is there any area of the

13   conditions of release where you disagree with the government?

14           MR. KLEIN:  I don't believe so.  I think he's going to

15   read it accurately to you, but if he doesn't, I will jump up.

16           THE COURT:  Thank you so much.

17           Mr. Rehn, please continue.  You're proposing a

18   $2 million bond secured by Mr. Storm's residence.  This is in

19   Washington State, sir?

20           MR. REHN:  That's correct, your Honor.

21           THE COURT:  And it would be, as well, one financially

22   responsible person by September 15th.  I imagine the thought

23   would be that Mr. Storm would be released on his own signature

24   today with all conditions to be met by the 15th of September;

25   is that correct?

1          MR. REHN:  Yes, your Honor.

2          THE COURT:  Let me hear from you on the other

3     conditions.  Anything that is different from what is set forth

4     in the recommendation on page 3?

5          MR. REHN:  Yes.  So just working through it, with

6     respect to No. 2, surrendering passports to Pretrial Services,

7     just for the Court's information, both his United States and

8     Russian passports were seized at the time of his arrest and

9     have already been delivered to Pretrial Services here in the

10    district.  So we don't think that condition should change, we

11    just wanted to let the Court know.

12         THE COURT:  Am I not then checking off that box

13    because you already have them?

14         MR. REHN:  No, I would still check it off in the event

15    he has --

16         THE COURT:  If he happens upon another one?  If he

17    finds himself with a third passport, we may have bigger issues

18    than that, but yes, fine.

19         MR. REHN:  I was just alerting the Court that that has

20    been complied with.

21         THE COURT:  Okay.

22         MR. REHN:  With respect to condition No. 4, travel

23    restricted to the Western District of Washington, the Central

24    District of California for legal purposes, my understanding is

25    that's where his counsel is located.  Then it says the Southern

1    and Eastern Districts of New York for court purposes only.  We

2    would request the Court add the District of New Jersey there

3    because I believe it's easier to fly into New Jersey at times

4    from the west coast.

5            THE COURT:  So you're saving us the trouble of saying

6    "and all districts."  Well, I mean, on that theory, couldn't we

7    just say, "and any district through which... that is required

8    for travel"?

9            MR. REHN:  You could.  I often prefer identifying the

10   districts because does that mean he could take a train?  I

11   don't know.

12           THE COURT:  Fine.  All right.  So we will add the

13   District of New Jersey.

14           MR. KLEIN:  Your Honor, one thing there with those

15   three districts.  I would add, "for court and legal purposes."

16   We may want to meet with him here for some reason, separate or

17   earlier than court.

18           THE COURT:  I see.  That's for the Southern and

19   Eastern Districts of New York, and New Jersey, sir?

20           MR. KLEIN:  Yes, your Honor.  We'll probably meet here

21   in Manhattan, but you never know.

22           THE COURT:  Okay.  Thank you.

23           MR. REHN:  I think the next conditions 5, 6, and 7 we

24   agree with.

25           With respect to condition No. 8, no contact with

N96CstoA

1  codefendants, victims, or witnesses unless in the presence of

2  counsel.  The parties have agreed to an exception to that.  It

3  would be with the exception of contact with Marina,

4  M-a-r-i-n-a, Evteshina.

5          THE COURT:  Oh, please spell that.  Thank you.

6          MR. REHN:  Evteshina, E-v-t-e-s-h-i-n-a.  In

7  connection with the Schultz Prime business and PepperSec

8  business only.

9          THE COURT:  Just one moment, please.

10  P-e-p-p-e-r-S-e-c?

11          MR. REHN:  That's correct.

12          THE COURT:  Thank you.

13          MR. KLEIN:  Your Honor, there's one small addition my

14  colleague just brought up to me, which is there's possibility

15  of a legal defense fund in this case, and she may help in that.

16  And so that's not necessarily covered by those two, but I think

17  if we could add that in connection with the legal defense fund

18  for this case.

19          THE COURT:  So it would be Ms. Evteshina in connection

20  with Schultz Prime, PepperSec -- is it PepperSec Incorporated?

21          MR. KLEIN:  It's an Inc., your Honor.  It's a Delaware

22  company.

23          THE COURT:  And any legal defense fund set up for

24  Mr. Storm?  I just want to make sure --

25          MR. KLEIN:  Any legal defense fund in connection with

N96CstoA

1    this case.

2              MR. REHN:  No objection to that, your Honor.

3              THE COURT:  Just so I'm aware, sir, may I ask, what is

4    Schultz Prime?

5              MR. KLEIN:  Schultz Prime --

6              THE COURT:  PepperSec shows up in the indictment, so

7    I've -- okay.

8              MR. KLEIN:  Sure.  My client is involved in a separate

9    business, that the government is aware of, that deals with

10   things totally unrelated to Tornado Cash or PepperSec.  That's

11   what does, it has two main business lines.  It helps -- I know

12   your Honor is a little bit more aware of crypto now, but it

13   helps with air drops in crypto and there is also like a staking

14   business, I think, tied to it, so that's what Schultz kind of

15   does.  None of it is related to any of the allegations in the

16   indictment.

17             THE COURT:  And Mr. Rehn, you're not objecting to the

18   friendly amendment to that exception?

19             MR. REHN:  No objection, your Honor.

20             THE COURT:  Thank you.

21             And then for 9 and 10, anything to add?

22             MR. REHN:  So for 10, I think we've agreed to a slight

23   amendment of No. 10.  We would ask that the condition read that

24   the defendant must disclose general information about

25   cryptocurrency assets held to Pretrial Services.  The rest of

1   it would be the same, except at the very end if we could add,

2   "or as approved by Pretrial Services."

3            THE COURT:  So it's:  "Must disclose general

4   information regarding crypto assets held to Pretrial Services

5   and may not transfer or alter any crypto..."  Is it

6   cryptocurrency or crypto assets?  And I do know there is a

7   difference.

8            MR. REHN:  I had said cryptocurrency assets, but

9   cryptocurrency is also, I think, fine.

10           THE COURT:  All right.  "...cryptocurrency unless

11  related to the business Schultz Prime Solutions or with prior

12  approval of Pretrial Services."

13           MR. REHN:  Yes.

14           THE COURT:  Mr. Klein, any objection to that friendly

15  amendment?

16           MR. KLEIN:  No.  Very friendly, your Honor.

17           THE COURT:  Sir, is there any provision that has not

18  been addressed to me by Mr. Rehn?

19           MR. KLEIN:  Not that I can think of, your Honor, no.

20           THE COURT:  This is a little bit more involved than

21  some of our other bail packages, so I'll ask you to just give

22  me a moment while we review it.

23           (Pause)

24           Counsel, I am adopting the proposal that was made.  I

25  do want to make sure I have it correct.  So what I'm planning

1    to put in place is the following:

2            "Mr. Storm would be released on a $2 million personal

3    recognizance bond with one financially responsible person

4    secured by property located in Washington;

5            "His travel restrictions are the Eastern and Southern

6    District of New York and District of New Jersey for court and

7    legal purposes, the Western District of Washington, and the

8    Central District of California for legal purposes;

9            "The surrender of travel documents and no new

10   applications;

11           "Pretrial supervision is directed by Pretrial

12   Services;

13           "Drug testing and treatment as directed by Pretrial

14   Services;

15           "Mr. Storm is not to possess a firearm or destructive

16   device or other weapon;

17           "He may be released today on his own signature with

18   the remaining conditions met by September 15th;

19           "He is to have no contact with codefendants, victims,

20   or witnesses unless in the presence of counsel, with the

21   exception of Marina Evteshina in connection with Schultz Prime

22   Solutions, PepperSec Incorporated, and/or any legal defense

23   fund in connection with this case;

24           "He is not to open any new bank accounts, lines of

25   credit, cryptocurrency accounts, or loans without permission

1   from Pretrial Services; and

2           "He must disclose general information about

3   cryptocurrency accounts held to Pretrial Services and may not

4   transfer or alter any cryptocurrency unless related to the

5   business Schultz Prime Solutions or with the prior approval of

6   Pretrial Services."

7           Do I have it correct, counsel?

8           MR. KLEIN:  Yes, your Honor.

9           MR. REHN:  Yes, your Honor.

10          THE COURT:  Thank you.

11          Just while I'm getting my notes together, let me ask

12  this question:  Should I be concerned or will I be involved at

13  all with the civil cases?  I believe there's one in Texas and

14  one in Florida.  I don't think they're coming here, I just want

15  to know will anything about my case be impacted by the

16  existence of those cases, if you know?  Mr. Klein.

17          MR. KLEIN:  Well, you've done your research,

18  obviously.  I don't think so.  My client is not a named party

19  in those cases.  Obviously I can't say what's going to happen

20  down there, but this is a discrete case.  They're doing their

21  thing.

22          THE COURT:  That's fine.

23          MR. KLEIN:  I don't anticipate it.

24          THE COURT:  I didn't know if, for example, sometimes

25  I'll have civil cases and there will be a motion to stay.  The

1    civil, of course, not the criminal.

2              MR. KLEIN:  Not from us, your Honor.

3              THE COURT:  Got it.  Thank you.

4              Mr. Rehn, anything I should know about civil or

5    administrative matters?

6              MR. REHN:  We aren't anticipating an impact of either

7    case on the other either.

8              THE COURT:  Great.  Thank you.

9              I'll be signing the bail disposition sheet

10   momentarily.

11             Mr. Rehn, from the folks at the front table, is there

12   any other information I should have today?

13             MR. REHN:  Nothing further from the government, your

14   Honor.

15             THE COURT:  Thank you, all.

16             Mr. Klein, anything else today?

17             MR. KLEIN:  That's it, your Honor.  Thank you.

18             THE COURT:  Thank you very much, and welcome.  Thank

19   you.  I will look for your protective order hopefully soon and

20   the bail disposition sheet is here.

21             Thank you very much.  We're adjourned.

22                           *  *  *

23

24

25