NBU5stoC

<pre>
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,              New York, N.Y.

 4                v.                         23 Cr. 430 (KPF)

 5    ROMAN STORM,

 6                    Defendant.

 7    ------------------------------x

 8                                           November 30, 2023
                                             3:25 p.m.
 9

10    Before:

11                    HON. KATHERINE POLK FAILLA,

12                                           U.S. District Judge

13

14                         APPEARANCES

15    DAMIAN WILLIAMS
           United States Attorney for the
16         Southern District of New York
      BY:  THANE REHN
17         BEN ARAD
           Assistant United States Attorneys
18
      WAYMAKER LLP
19         Attorneys for Defendant
      BY:  BRIAN E. KLEIN
20         KERI AXEL

21

22

23

24

25
</pre>

NBU5stoC

1          (Case called)

2          MR. REHN:  Good afternoon, your Honor.  Thane Rehn and

3     Ben Arad for the United States, and we are joined at counsel's

4     table by Elizabeth Kudirka and Halie Richins from the Federal

5     Bureau of Investigation.

6          THE COURT:  Thank you all very much.  Good afternoon

7     to you all.  Thank you.

8          Sir.

9          MR. KLEIN:  Good afternoon, your Honor.  Brian Klein.

10    With me is my colleague Keri Axel, who is going to be

11    submitting her *pro hac vice* application.

12         THE COURT:  Not yet, huh?

13         MS. AXEL:  We just realized it was in my inbox so I

14    have not been approved.

15         THE COURT:  Oh.  I can't sign what I haven't seen, so

16    yes.

17         MS. AXEL:  I apologize, your Honor.

18         THE COURT:  All right.  I now know where it is.  Thank

19    you.

20         And Mr. Storm, good afternoon to you as well.

21         THE DEFENDANT:  Good afternoon.

22         THE COURT:  Thank you.  Please, be seated.

23         Mr. Rehn, should I be directing questions to you or

24    Mr. Arad this morning?

25         MR. REHN:  You can direct questions to me, your Honor.

1          THE COURT:  Thank you.

2          Since last we saw each other, what productions has the

3    government made in terms of both quantum of data but also if

4    you can give me a sense of the percentage of Rule 16 discovery

5    that's been completed?

6          MR. REHN:  Yes, your Honor.

7          In terms of the quantum of data, as I think I

8    mentioned before at our first conference, we estimated data

9    production in the terabytes.  I think we have lived up to that.

10   It's been at least one or two terabytes of data which has

11   included all of the subpoena returns that were in the

12   government's custody at the time the case was charged; it

13   includes returns from Mutual Legal Assistance Treaty that

14   basically included a search, that was conducted by another

15   country, of a cell phone belonging to an alleged

16   co-conspirator; search warrant returns from Google; from a

17   company called Discord; from companies called DigitalOcean and

18   GitHub.

19          THE COURT:  Just one moment, please, sir.  Thank you.

20          MR. REHN:  ICloud reports --

21          THE COURT:  No, no.  One moment.  I want to make sure

22   I am writing down what you are telling me.  Please continue.

23   Thank you.

24          MR. REHN:  I think that's the primary type of material

25   we have produced.  We have also produced full forensic images

1  of the devices that were seized from the defendant's residence

2  at the time of his arrest.  What hasn't been produced yet are

3  primarily the responsive materials from those devices.

4          THE COURT:  I want to make sure I understand what you

5  are saying.  So let's just say it is a cell phone, smart phone,

6  for example.  You have produced an image of the phone with

7  everything on it, so to the extent Mr. Storm wanted to go

8  looking through that image he could look for everything, but in

9  terms of identifying what in particular the government believes

10  to be Rule 16 material, that's what you are in the process of

11  doing now.

12          MR. REHN:  That's correct, your Honor.

13          THE COURT:  I understand that, sir.

14          MR. REHN:  So, the case agents have been conducting

15  that review since the time of the arrest.  Obviously it is a

16  process that includes --

17          THE COURT:  A terabyte of information.

18          MR. REHN:  -- getting the agent to review it so it is

19  a time consuming process.  I have spoken with them before

20  today's proceeding about the time estimate on completing that

21  process and we are very hopeful it will be done by the end of

22  the year, which is about a month from now.

23          THE COURT:  About.  Yes.  OK.

24          MR. REHN:  So, at that point, essentially discovery

25  will be complete.

1          THE COURT:  One moment, please.

2          Apart from reviewing the images of the devices, are

3     there, for example, outstanding subpoenas or MLATs or anything

4     else that you currently expect to receive materials from?

5          MR. REHN:  I don't believe so.  The agent has informed

6     me that there may somebody subpoenas still outstanding.  I know

7     we have received recently two subpoena returns which we intend

8     to produce in short order.  It sounds like there may be a small

9     number of additional subpoenas still outstanding.

10         THE COURT:  Does your end of your benchmark, which I

11    am taking as an end of year commitment, extend to those

12    subpoena returns?  For example, they weren't just sent out

13    before this conference, I presume they were sent out days,

14    weeks earlier.

15         MR. REHN:  That's correct, your Honor.

16         THE COURT:  OK.

17         MR. REHN:  So as soon as those returns are produced,

18    we will prepare them for production and produce them.  So we

19    are not anticipating extensive additional discovery spilling

20    over extensively into 2024.

21         THE COURT:  No, I'm not either.  I am expecting by end

22    of year.  What else should I know from the government's

23    perspective, sir?

24         MR. REHN:  I think in terms of the discovery that is

25    largely the state of play.  I should say there are some other

NBU5stoC

1    devices that were searched from other individuals which there

2    may still be some review ongoing of those devices as well so it

3    is not just the defendant's devices, we are reading to identify

4    various responsive materials.

5              THE COURT:  Your end of year benchmark applies to

6    those as well, sir?

7              MR. REHN:  Yes, your Honor.

8              THE COURT:  Thank you.

9              And so, from your perspective, by the end of the year

10   the ball is effectively in the court of Mr. Storm in terms of

11   deciding what to do next.

12             MR. REHN:  That's correct, your Honor.  And I should

13   note that, for example, if there was an interest in filing

14   motions to suppress, the underlying warrants that generated all

15   of this material were produced long ago and he has all of those

16   materials.

17             THE COURT:  OK.  Thank you.

18             And the government itself is not contemplating

19   affirmative motion practice?

20             MR. REHN:  That's correct, your Honor.

21             THE COURT:  Thank you.

22             Mr. Klein, shall I be directing my questions to you or

23   Ms. Axel?

24             MR. KLEIN:  Yes.  Me, your Honor.

25             THE COURT:  So you have a lot of materials right now,

NBU5stoC

1    I presume.  You are getting more in the next 31, 32 days.  What

2    do you see as next steps on behalf of your client?

3                MR. KLEIN:  Yes, your Honor.

4                So we conferred with the government before coming here

5    about a proposed motion schedule, and as the government

6    mentioned there are terabytes --

7                THE COURT:  Terabytes, plural.  I thought it was

8    terabyte in the singular.  At that level it doesn't matter.

9                MR. KLEIN:  More than one terabyte I think is

10   terabytes.

11               THE COURT:  OK.

12               MR. KLEIN:  Yes, that level it really becomes not so

13   important but, your Honor, do you want me to give the dates we

14   had talked to the government about?

15               THE COURT:  I would first like you to outline the

16   motions you intend because I am trying to understand, for

17   example, are you contemplating motions at which there would be

18   witness testimony or a motion for which there would simply be

19   oral argument?

20               MR. KLEIN:  At present, your Honor, we are

21   contemplating a motion to dismiss so we would ask --

22               THE COURT:  May I ask on what basis?

23               MR. KLEIN:  Your Honor, we are still going through

24   that but we think there are legal flaws with the indictment

25   relating to certain of the charges that we wanted to file

1   motion to dismiss on.  One we have thought about already is the

2   unlicensed money transmittal charge.

3           THE COURT:  Sir, I am certainly not asking you to

4   divulge your defense to the government, but have you previewed

5   for the government your belief that that charge may have been

6   improperly done?  And I am asking because I just want to know

7   whether the government is going to swoop in and supersede and

8   obviate the need for motion practice.  That is obviously my

9   optimistic view of things but I don't know if that is

10  something -- I'm not sure if that is something that can be

11  fixed, sir.

12          MR. KLEIN:  We previewed with them that they shouldn't

13  have charged our client.

14          THE COURT:  Well, that one, yes.

15          MR. KLEIN:  We have not gone through with them

16  specifics about the anticipated motioned to dismiss yet.

17          THE COURT:  Of course.

18          MR. KLEIN:  We plan to do that, your Honor, well in

19  advance of the motion date in case, in my opinion very

20  unlikely, the possibility that they would dismiss a count or

21  choose to supersede.

22          THE COURT:  Yes.  I understand.  OK.

23          Are there other motion to dismiss arguments you are

24  willing to share with me or are they still in formation?

25          MR. KLEIN:  Still being formed, your Honor.

1        THE COURT:  Thank you.

2        And are there other motions that you are

3   contemplating, sir; suppression or otherwise?

4        MR. KLEIN:  We are considering suppression but I can't

5   say that we have decided to file one, your Honor.  Obviously

6   there was a search and seizure here so we are looking at those

7   issues.

8        THE COURT:  Yes.

9        MR. KLEIN:  We are waiting for the rest of the

10  discovery to come in to see if there were other searches and

11  stuff before we start focusing on one but we will start

12  focusing on it now that we have heard discovery is almost done.

13       THE COURT:  Yes.

14       MR. KLEIN:  In that case we would be filing in advance

15  of the government to see if they would be willing to not use

16  that evidence.  I think that is generally very unlikely.

17       THE COURT:  Sometimes it happens, yes.

18       MR. KLEIN:  Sometimes, yes.  And so, those are our

19  thoughts on motions right now, substantive motions.  We are

20  premature for motions *in limine* and other things.

21       THE COURT:  Of course.  And I imagined you were not of

22  the group that would be to be motion for co-conspirator

23  statements, motion for early disclosure of *Brady*.  The sort of

24  menu of motions that I see in some cases whether it is –- not a

25  motion for severance at this point, so I understand that.  As I

1    see them I will resolve them.

2              MR. KLEIN:  Perfect.  That's what we were hoping for.

3              Your Honor, also, so do you want those dates now?

4              THE COURT:  I want the proposed dates, yes.

5              MR. KLEIN:  Proposed dates, to be very clear.

6              THE COURT:  I am asking for you to be that clear.

7    Thank you, sir.

8              MR. KLEIN:  So, we had, based on -- and I will tell

9    you based on the amount of discovery, our own other trial

10   commitments, your Honor, we proposed some dates which they

11   found acceptable.  The first one was motions would be filed on

12   March 29.

13             THE COURT:  March 29; four months from now March 29?

14             MR. KLEIN:  Yes.  Your Honor, Ms. Axel and I have a

15   trial currently scheduled for January 16 in L.A. that will be

16   several weeks.  That's part of the reason we need more time.

17             THE COURT:  I see.

18             MR. KLEIN:  In addition, I have another trial here in

19   the Southern District on April 8, and so there is a number of

20   finding dates between those that work that give us the time

21   needed to prepare what we think will be a very substantive set

22   of motions to dismiss.  We propose March 29.  Again, the

23   government hasn't opposed that.  The other suggested date for

24   opposition would be April 26, so the government would have 30

25   days.  And then replies would be May 17.

NBU5stoC

1          THE COURT:  One moment, please.  It appears that I am

2     on trial for the entire month of May into June, which I knew.

3          Ms. Noriega, I think -- and recognizing this may bite

4     me at some point -- June 20th at 10:00 a.m. for oral argument,

5     if that works for the parties.

6          MR. KLEIN:  One moment, your Honor, with my calendar?

7          THE COURT:  Yes.

8          MR. KLEIN:  Your Honor, I have a trial in Portland

9     state court, of all places, sometime starting in June and it is

10    not on my calendar for some reason.  I am trying to figure out

11    when I am supposed to be there.  One second.

12         MR. REHN:  Your Honor, that date is actually not --

13    ironically that's the one date in 2024 that is problematic for

14    the government.

15         THE COURT:  Because?

16         MR. REHN:  Because my kids' school ends on the 18th

17    and we are planning to take the rest of that week on a little

18    family trip.

19         THE COURT:  Oh sure.  Two or three at this point, sir?

20         MR. REHN:  Three, your Honor.

21         THE COURT:  Oh, I would ruin three children's lives.

22         MR. REHN:  It would be difficult.

23         (Court and deputy confer)

24         THE COURT:  As a second attempt at getting it

25    scheduled, June 25 at 11:00?

NBU5stoC

1    MR. KLEIN:  Your Honor, that works for the defense.

2    MR. REHN:  Yes, your Honor.

3    THE COURT:  There is a small chance that I would have

4    to be doing attorney admissions at that moment because I'm on

5    Part I duty.  If so, we just begin a little bit later.  I don't

6    think it would take all morning.  So June 25, oral argument.

7    MR. KLEIN:  Your Honor, can I raise one point with the

8    motion practice?

9    THE COURT:  Sir.

10   MR. KLEIN:  We anticipate there will be a number of

11   parties who are in the privacy cryptocurrency advocacy group

12   industries that may want to file amicus briefs in connection

13   with our motion to dismiss.  And I followed the Coinbase case

14   closely, your Honor, and I see that you allowed amicus briefs.

15   THE COURT:  One week after, I believe.

16   MR. KLEIN:  So if there is a schedule now that I could

17   let people know, that would be helpful, if you are willing to

18   entertain amicus brief.

19   THE COURT:  I didn't want them in Coinbase.  I suppose

20   I shouldn't also disregard them here.  But what I do with them

21   is up to me but I at least will receive them.  Anyone wishing

22   to file an amicus brief, and perhaps this can go into our

23   minute entry, that anyone wishing to file amicus brief would

24   have to file it within one week of the party whose position

25   they're reporting and not the reply -- I don't want anything

NBU5stoC

```
 1    off of the reply date.  So, yes, you can tell your friends
 2    within a week of yours.
 3              MR. KLEIN:  Yes, your Honor.
 4              THE COURT:  I don't know if there will be any amicus
 5    briefs coming from the government coming from who knows.  I did
 6    get some in Coinbase so stranger things have happened.
 7              I don't intend, as in Coinbase, I don't intend to have
 8    them argue, though.
 9              MR. KLEIN:  Understand, your Honor.
10              THE COURT:  Mr. Klein, I am going to ask this because
11    I ask this in almost every case:  We are having motion
12    practice, yes?
13              MR. KLEIN:  Yes.
14              THE COURT:  You don't contemplate, for example, a
15    pre-motion resolution of this case?
16              MR. KLEIN:  No, your Honor.
17              THE COURT:  That's fine.  I need to know how real this
18    is.  These are real.
19              MR. KLEIN:  Very real, your Honor, in our mind, unless
20    the government dismisses the case which I don't believe.
21              THE COURT:  Which is not happening.  Yes.  OK.  Thank
22    you.
23              Mr. Klein, am I also setting a trial date?
24              MR. KLEIN:  Your Honor, we are not asking you to set a
25    trial date at this time.  We had given thought to a trial date
```

NBU5stoC

1    possibility.

2              THE COURT:  OK.

3              MR. KLEIN:  But we had related that to the government

4    and they had their own view on this, I guess.

5              THE COURT:  Well, what was your view?

6              MR. KLEIN:  Our view was September 23rd, or the

7    soonest date thereafter, that is convenient for the Court based

8    on the motion schedule, etc.

9              THE COURT:  Mr. Rehn, I assume the government is not

10   amending the motion schedule that I just effectively endorsed.

11   What is the government's view with respect to an appropriate

12   trial date?

13             MR. REHN:  Your Honor, what we had told the defense is

14   we would hope for a trial date as soon after the motion

15   schedule as the Court is available, but if September 23rd is

16   the soonest available date, the government is amenable to that

17   date.

18             THE COURT:  Let me just spitball for a moment, please.

19   I do not have trials currently in the month of July.  I do have

20   them in, for a substantial chunk of June up until basically the

21   oral argument date, and for all of May.  I don't have them in

22   August and I have had perfectly fine results, surprisingly fine

23   results with the jury trials I have had in August.  I have now

24   had two and I thought they would be problematic and they

25   weren't.  I have time in August.  I have time in September.  If

NBU5stoC

the parties feel, for example, that the jury might not be as
engaged in August as they might be in September, I would listen
to you.  I am just telling you, though, that I have now had, in
the last two years, August trials that were fine.  But
Mr. Klein, you are shaking your head.  So?

          MR. KLEIN:  Your Honor, we will need a substantial
amount of time to prepare for trial after the motions, which
may shape some of the issues we are dealing with.  And also, I
have a concern about August, generally.  In addition, of
course, although I only have two children, I have a preplanned
family vacation already for parts of August and late July, so
it would be only ruining two children's part of their summer.

          THE COURT:  Still, I would be ruining two children's
part of their summer.

          MR. KLEIN:  So we were looking on a date that made
sense based on the level of work needed to prepare and be ready
for trial, also the fact you having to decide these motions
given your Honor's time.  We are hopeful, of course, that we
will win them, but even if we lose, sometimes your Honor has a
ruling that gives us a lot of guidance that will shape our
trial strategy.  So we thought, based on all of those concerns,
September 23rd was a fine date to do it.

          THE COURT:  How long do the parties see this going?
Is this a four-week trial?  A three-week trial?

          MR. REHN:  I think the government's case is going to

NBU5stoC

1    be in the neighborhood of two weeks.

2              THE COURT:  And there may be a defense case so I

3    should leave a week for the defense case.

4              MR. KLEIN:  I think a week is fair, your Honor; yes.

5              THE COURT:  So that would be the weeks of September

6    23rd, September 30th, and October 7th?

7              I am advised by my deputy that there may be holidays

8    during that time period so I don't know how the parties want to

9    accommodate that.  I guess -- one moment, please.

10             (Court and deputy confer)

11             THE COURT:  My deputy advises me that there are

12   holidays October 3rd and October 11; October 3rd would suggest

13   that we be not hearing evidence on that day.  The 11th, for all

14   I know we could be done by that point.  So I think we go

15   forward but I will hear from the parties if they hold a

16   different view.

17             MR. REHN:  I think that's right, your Honor.  The

18   11th, I believe, is when Yom Kippur begins.

19             THE COURT:  Yes.

20             MR. REHN:  But that begins in the evening and that's

21   Friday, so if we were to end the day sort of in the

22   mid-afternoon.

23             THE COURT:  My day ends at 3:30 so.

24             MR. REHN:  That shouldn't interfere with --

25             THE COURT:  Right.  And if it does, then we will break

early.  I'm not going to inconvenience anyone or impinge on

their religious observances.  So I think if we are doing a fall

trial we can't help but to hit some holiday at some point so I

think that's fine.  We will block these three weeks.

Understand, please, that you should be receiving a trial order

from me.  Imagine that four weeks before the trial date

proposed voir dire, proposed request to charge, proposed

motions *in limine* would be due about three weeks before the

trial date; your opposition to any motions *in limine* would be

June; about two weeks before the trial date we would have a

final pretrial conference; and then there would be the trial

date.  We will figure out those dates again by looking at my

schedule but we will issue a written trial order on that front.

I am very much getting ahead of myself here but my day is 9:00

to 3:30 with very abbreviated breaks and shortened lunch for

work and child care issues of my jurors.

            Other things we should be talking about then?  Sir?

            MR. KLEIN:  Your Honor, we obviously are going to

request 3500 -- maybe this isn't obvious -- but in advance of

the trial.

            THE COURT:  I usually order it a week in advance of

trial, sir, but in this case, given the length of time, there

might be a rolling production so it might be two weeks in

advance of when the witness is expected to testify.  I do think

at this -- now, you are getting in the cart before horse stage,

1    sir, because in your view of the world I'm going to be so

2    impressed by your motions we will never have to deal with that.

3         MR. KLEIN:  You are right, your Honor.  So I will wait

4    until we win on the motion to dismiss and that won't become an

5    issue.

6         THE COURT:  You are exactly right.  Thank you.

7         Mr. Rehn, from your perspective, are there other

8    issues we should be addressing?  And let me offer an issue to

9    you.  From my perspective, I think I would like to, if we are

10   going to be excluding time, I think I would be excluding it

11   through June and not through September.  I recognize, and let

12   me say to the parties, that on or about March 29th, the

13   exclusions will start automatically.  Still, I'm often asked by

14   the government, for belts and suspenders purposes, to exclude

15   under the catch-all provision through the date of the oral

16   argument just in case something happens and a motion isn't

17   filed and, instead, there are discussions, or if the motion

18   schedule is altered in some way.  But, listen.  I will listen

19   to the parties in terms of what date the government is going to

20   suggest as the ending date of the exclusion of time and what

21   date the defense is going to consent to if there is one for the

22   exclusion of time.  I am just telling you what I am not

23   comfortable doing is excluding through the proposed trial date.

24   That's my only point.

25        Mr. Rehn, do you want to speak with the defense or is

NBU5stoC

1    there an application you wish to make?

2              MR. REHN:  I think we can make an application.

3              THE COURT:  Go ahead.

4              MR. REHN:  As we have been discussing there has been

5    voluminous discovery, there is still some discovery that is

6    coming to the defense which they will need time to consider and

7    decide whether to bring any motions and the Court has set a

8    date to hear argument on those motions on June 25.  So in light

9    of the defense's need to review the discovery, prepare any

10   motions it wishes to prepare, and then come to the Court to

11   argue those motions, it seems to the government that it would

12   be in the interest of justice and would outweigh the interests

13   of the defendant and the public in speedy trial to exclude time

14   from today until June 25, when the Court hears argument on any

15   defense motions.

16             THE COURT:  The defense position, please?

17             MR. KLEIN:  No opposition, your Honor.

18             THE COURT:  Sir, thank you.  May I address this

19   directly to your client.

20             MR. KLEIN:  Yes, your Honor.

21             THE COURT:  Thank you.  Mr. Storm, you are welcome to

22   sit down, sir, and I appreciate it.  In our last proceeding we

23   discussed the Speedy Trial Act and there are exclusions under

24   it and you will recall that I excluded time between the last

25   conference and today's conference with the idea that during

1    that time period discovery would be produced, and you and your

2    attorneys could review discovery and discuss the possibility of

3    motion practice.

4         At that time I made a finding and that finding was

5    that excluding that time period, and in the interest served by

6    excluding that time period, outweighed the interests that you

7    in particular had and that the public in general had, in you

8    getting to trial more quickly.  And that is because I wanted

9    you to review the discovery with your attorneys and figure out

10   what you wanted to do.  I am now advised that the amount of

11   discovery is more than I could have anticipated, you are still

12   reviewing it, there are substantive important motions that your

13   attorneys wish to bring on your behalf, and they want the

14   opportunity to discuss them with you, to continue to review

15   discovery, understanding that discovery is going to be produced

16   through the end of this year and also to file the best motions

17   that they can.

18        As a general matter, once those motions are filed,

19   time is excluded automatically, but just in the interests of

20   being extra careful I'm going to make the finding that the

21   period of time, excluding the period of time from today's date

22   through the oral argument on the matter which is June 25, that

23   excluding that period of time serves the interests of justice

24   in a way that outweighs any inconvenience to you by having to

25   wait to go to trial, or the public and you having to wait to go

NBU5stoC

1    to trial because I really do want you and your attorneys to

2    look at this material, to receive this material, and to make

3    the best motions possible.

4            So, do you understand, sir, that that is why I am

5    excluding time?

6            THE DEFENDANT:  Yes, I do, your Honor.

7            THE COURT:  Thank you.

8            Mr. Rehn, are there additional things you and your

9    team want to bring to my attention in this proceeding?

10            MR. REHN:  No, your Honor.

11            THE COURT:  Many thanks.

12            Mr. Klein, anything that you and Ms. Axel would like

13    to bring to my attention in this proceeding?

14            MR. KLEIN:  No, your Honor.

15            THE COURT:  All right.  It doesn't look like I am

16    going to see you all before the holidays.  Happy Holidays,

17    Happy New Year to you, and in some manner I look forward to

18    your motions.

19            Thank you very much.  We are adjourned.

20                            o0o

21

22

23

24

25