# EXHIBIT A



May 9, 2024

Hon. Merrick Garland
Attorney General of the United States
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Re:   Money Transmitting Business Registration and Non-Custodial Crypto Asset Software

Dear General Garland,

We write to express our grave concerns regarding the U.S. Department of Justice's (DOJ) recent policy arguments that dramatically expand the scope of the Federal prohibition on operating an unlicensed money transmitting business.[1] The DOJ's unprecedented interpretation of this statute in the context of non-custodial crypto asset software services contradicts the clear intent of Congress and the authoritative guidance of the Department of the Treasury's Financial Crimes Enforcement Network (FinCEN). This interpretation threatens to criminalize Americans offering non-custodial crypto asset software services.

The Federal money transmitting business statute (18 U.S.C. § 1960) makes it a criminal offense to "knowingly conduct … an unlicensed money transmitting business."[2] Criminal liability applies when a person: (1) was required by a State to become licensed as a money transmitter; (2) when a person is required by Federal law to register; or (3) if the person is engaged in money transmission (whether registered or not) and is engaged in illicit finance.[3]

The Bank Secrecy Act (31 U.S.C § 5330) defines "money transmission" as "*accepting* currency, funds, or value that substitutes for currency *and transmitting* the currency, funds, or value that substitutes for currency by any means."[4] The use of the term "accepting" which is commonly defined as "to receive (something offered) willingly"[5] provides clear evidence that Congress intended a requirement that a money transmitter have taken control of users' assets as the *sine qua non* of activities within the scope of the statute.

FinCEN regulations mirror this language regarding acceptance and transmission. The relevant rule states that money transmission "means the *acceptance* of currency, funds, or other value that substitutes for currency from one person *and the transmission* of currency, funds, or other value that substitutes for currency to another location or person by any means."[6] The statutes and regulations are clear that direct receipt and control of assets are required elements of money transmission. Indeed, this limiting factor is essential, otherwise a wide range of additional services such as internet service providers or postal carriers could inadvertently be caught in the definition of a money transmitting business since they routinely send, receive and process information and messages regarding payments.

---

[1] *See, e.g., Superseding Indictment*, 24-CR-82 (ECF 4) (S.D.N.Y. Apr. 24, 2024); *Government's Opposition to Defendant Roman Storm's Pretrial Motions,* 23-CR-430 (ECF 53) (S.D.N.Y. Apr. 26, 2024).
[2] 18 U.S.C. § 1960(a).
[3] *Id*. at (b).
[4] 31 U.S.C. § 5330(d)(2) (emphasis added).
[5] *Accept*, Merriam-Webster, https://www.merriam-webster.com/dictionary/accept.
[6] 31 C.F.R. § 1010.100(ff)(5) (emphasis added).

Consequently, non-custodial crypto service providers cannot be classified as money transmitter businesses because users of such services retain sole possession and control of their crypto assets. At no point when operating or providing non-custodial services do such service providers "accept" crypto assets from their users. At all times, users retain exclusive custody and control over the private keys to their crypto assets. All transactions are signed and processed on the user's local device *without third party access*.

Consistent with Congress' intent, statutory language and existing regulations, FinCEN has consistently taken this same position in published guidance that *non-custodial services are not within the scope of money transmission registration requirements*. Over a decade ago, FinCEN published guidance which explained that activities which "involve neither 'acceptance' nor 'transmission' of the convertible virtual currency . . . are not the transmission of funds within the meaning of the Rule."[7] Additional FinCEN guidance from 2019 further confirmed that the definition of "money transmitter" is anchored in the custodial function of the putative registrant with relevant factors including "where the value is stored" and "whether the person acting as an intermediary has total independent control" of the assets.[8] FinCEN explicitly held that "in so far as the person conducting a transaction through the unhosted wallet is doing so to purchase goods or services on the user's own behalf, they are not a money transmitter."[9] Contemporary analysis of this 2019 guidance by law firms clearly establishes this fact as well.[10]

Consequently, as the primary interpretive authority for the Bank Secrecy Act and Federal money transmitting business registration requirements, FinCEN has clearly established that non-custodial crypto asset software—where the developer or publisher of the software does not have unilateral control of user assets—*are not subject to money transmitting business registration*, just like existing internet service providers are not required to register when routing data packets between a customer and their bank. It is very concerning that DOJ would adopt an interpretation of this registration requirement that is contrary to another Federal agency.[11] This makes it difficult for ordinary Americans to determine what their legal obligations are.

This reasoning also comports with common sense. Assets like Bitcoin may be natively digital, but they are not amorphous such as heat or electricity. Bitcoins have a clear unilateral owner at all times. If a user wishes to transfer Bitcoin to someone else, they use their private key to sign a transaction which transfers the Bitcoins to a new address. At no point in the transaction process is there uncertainty over where ownership resides. Custody and control are, therefore, the logical touchstone of where "acceptance" and

---

[7] *Application of FinCEN Regulations to Virtual Currency Mining Operations*, FinCEN Administrative Ruling FIN 2014-R001 (Jan. 30, 2014), at *3.

[8] *Application of FinCEN's Regulations to Certain Business Models Involving Convertible Virtual Currencies*, FIN 2019-G001 (May 9, 2019), at *10, 16 ("a person still qualifies as a money transmitter if that person's activities include *receiving one form of value* (currency, funds, prepaid value, value that substitutes for currency – such as CVC, etc.) from one person *and transmitting either the same or a different form of value* to another person or location…") (emphasis added).

[9] *Id.* at *16.

[10] Mike Nonaka, Jenny Konko and Cody Gaffney, *FinCEN Issues Guidance to Synthesize Regulatory Framework for Virtual Currency, J. on Investment Compliance*, Nov. 2019, *available at* https://www.cov.com/-/media/files/corporate/publications/2019/11/fincen-issues-guidance-to-synthesize-regulatory-framework-for-virtual-currency.pdf*;* Martin Hirschsprung, *FinCEN Issues Guidance on Cryptos*, *Morgan Lewis All Things FINREG Blog,* May 21, 2019, *available at* https://www.morganlewis.com/blogs/finreg/2019/05/fincen-issues-guidance-on-cryptos; Jones Day, *Financial Crimes Enforcement Network Consolidates Guidance on Virtual Currencies*, June 2019, *available at* https://www.jonesday.com/en/insights/2019/06/fincen-consolidates-guidance.

[11] *Government's Opposition to Defendant Roman Storm's Pretrial Motions,* 23-CR-430 (ECF 53), at *33 (S.D.N.Y. Apr. 26, 2024) ("FinCEN Guidance is not a regulation or rule and has no authoritative effect").

"transmission" occurs on Bitcoin or other crypto networks, just like traditional assets. Analogies to heat or data transfer via USB made by the DOJ fundamentally misunderstand how this technology operates.

The DOJ should not diverge from the clear, logically sound, and well-established definition of "money transmission" established by FinCEN. Subjecting developers of non-custodial crypto asset software to potential criminal liability as unregistered money transmitters contravenes the well-established interpretation of this provision and will only serve to stifle innovation and shake confidence in the DOJ's respect for the rule of law.

We urge you to discard this flawed interpretation of Section 1960. Safeguarding the rule of law and nurturing the development of transformative technologies are not mutually exclusive, we expect that the DOJ can chart a wise course that accomplishes both.

Sincerely,

Cynthia M. Lummis
United States Senator

Ron Wyden
United States Senator