

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

February 28, 2025

**BY ECF & EMAIL**
The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Roman Storm*
               23 Cr. 430 (KPF)

Dear Judge Failla:

      The Government respectfully submits this letter in response to the defendant's February 26, 2025 letter motion seeking to compel certain disclosures. (Dkt. 130 (the "Motion")). The defendant seeks an order requiring the Government to produce what he characterizes as "*Brady* materials." More specifically, the defendant seeks production of (1) statements by others involved in the Tornado Cash service in which they denied being involved in a criminal conspiracy, stated that they believed they were acting in good faith, or made other statements that "support defense theories" (the "Tornado Cash witness statements"); and (2) statements made by Chainalysis personnel regarding "errors related to their analysis of Tornado Cash," and any "work product" in which the Government has relied on Chainalysis for attribution of hacks to North Korea (the "Chainalysis work product"). The Government has at all times complied with its *Brady* obligations in this case, and continues to comply with *Brady* and with this Court's orders regarding the Government's *Brady* obligations. Although the Tornado Cash witness statements are not *Brady* materials, the Government has already produced Tornado Cash witness statements in its possession that meet the description offered by the defense, so that request should be denied as moot. In addition, any Chainalysis work product is not *Brady*, and the Government does not intend to rely on any Chainalysis analysis, work product, or attributions at trial, so the defendant's request for Chainalysis work product should be denied as well.

      By way of background, on January 14, 2025, the defense sent a letter to the Government in which it requested production of the Tornado Cash witness statements, characterizing any such statements as *Brady* material. (Dkt. 130 Ex. 1). The parties met and conferred, and on January 29, 2025, the Government sent the defense a letter in which it explained in detail why the Tornado Cash witness statements were not *Brady* materials. A copy of the Government's letter is attached to the Motion. (Dkt. 130 Ex. 3). The Government will not repeat its arguments in full here, but in short, the Government's letter explained that any such statements would reflect the state of mind of those other persons, not of the defendant, and in any event the defendant was already on notice of those witnesses and thus the Government had no obligation to produce their statements. (Dkt.

130 Ex. 3 at 1-2 (citing *United States v. Feng Ling Liu*, No. 12-CR-934-01 RA, 2015 WL 4460898, at *16 (S.D.N.Y. July 20, 2015) ("[T]he government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to call the witness and thus take advantage of any exculpatory testimony that he might furnish"—a proposition that "takes on a particular significance with regard to alleged co-conspirators") (citations and quotation marks omitted), and *Harris v. United States*, 9 F. Supp. 2d 246, 276 (S.D.N.Y. 1998)). In the Motion, the defendant makes no attempt to address the Government's position or the corroborating case law, and simply asserts without citation that the Tornado Cash witness statements "meet the definition of *Brady* material." (Motion at 1). That is incorrect for the reasons given in the Government's letter.[1]

Nonetheless, after receiving the defendant's request in January, the Government reviewed its files for witness statements that met the defendant's specific request for "statements made by Tornado Cash users, relayers, token holders, developers, or others connected to Tornado Cash in which the person denies they were engaged in a criminal conspiracy with Mr. Storm or his alleged coconspirators, believed in good faith that their involvement with Tornado Cash was lawful, and/or made statements that support defense theories as articulated in Mr. Storm's various motions." (Motion at 1). The Government identified four witnesses who arguably made such statements, and produced not only the relevant statements, but all statements in its possession made by those witnesses.[2] Accordingly, even though it is not currently under any obligation to produce these statements, the Government has done so. The defendant's request should accordingly be denied both because it lacks a basis in law and also because it is moot.

---

[1] It is separately incorrect because the statements, in context, are not materially exculpatory. The Motion cites a few isolated snippets from lengthy interview summaries in an effort to create the impression that these witnesses would provide exculpatory testimony, but omits critical context. To take one example, the defendant quotes notes from an attorney proffer that ███████ ████████████████████████████████████████████████ (Motion at 5). But the Motion fails to note that ███ ████████████████████████████, before the defendant made a number of changes to the Tornado Cash service as alleged in the Indictment, and before the start of any of the conspiracies alleged in the Indictment. In any event, that portion of the attorney proffer notes is simply quoting a chat that the Government produced in discovery in September 2023, so even if the chat is *Brady*, it was produced long ago.

[2] The defendant's Motion refers to redactions in one of the produced documents. (Motion at 4 n. 2). That document contains notes from a call with a witness's attorney in which a portion of the call involved an attorney proffer, and the redacted portions of the notes do not contain proffered statements of the witness.

Additionally, the defendant's reference to "others connected to Tornado Cash" could be interpreted broadly to apply to any third-party vendor who provided any services to the Tornado Cash service, such as a bank or internet service provider. The Government does not interpret the defendant's request in that way, and produced responsive statements by witnesses who played a more active role in the Tornado Cash service, such as investors in the service and relayers.

  The defendant's second request is for production of Chainalysis work product relating to Tornado Cash and North Korea. As explained in the Government's January 29, 2025 letter, any such statements, regarding a third party's assessment of its own analysis of the scope of the defendant's criminal conduct, is not covered by *Brady* or any other discovery obligation. In any event, the Government is not relying on any Chainalysis work product, analysis, or attributions in this case. The Government has produced to the defense detailed expert disclosures that explain the cryptocurrency tracing it intends to present at trial, and that do not rely on Chainalysis or contain any reference to Chainalysis work product or analysis. Accordingly, the defendant's request should be denied.

           Respectfully submitted,

           MATTHEW PODOLSKY
           Acting United States Attorney

    By:  */s/ Thane Rehn*
           Benjamin A. Gianforti
           Thane Rehn
           Ben Arad
           Assistant United States Attorneys
           (212) 637-2490

           Kevin Mosley
           Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)

The Court has reviewed the defense's letter motion regarding the disclosure of supposed *Brady* materials (Dkt. #130), and an unredacted version of the same, as well as the Government's opposition letter (Dkt. #136), and an unredacted version of the same. The Court hereby DENIES the defense's application for an order compelling the Government to conduct a thorough *Brady* review and produce all *Brady* materials immediately.

To begin, the Court is confident that the Government is aware of its disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny. The Court had a colloquy with the Government at the September 6, 2023 arraignment regarding the Government's obligations under Federal Rule of Criminal Procedure 5(f). (*See* September 6, 2023 Minute Entry). The Government confirmed its awareness of its obligations under Rule 5(f), that it had complied with them to date, that it would continue to comply with them, and that it was aware of the consequences of noncompliance. (Dkt. #15 at 3:13-4:2). What is more, at a July 12, 2024 hearing, the Government confirmed that it "ha[d] fully complied with its discovery obligations under ... Brady and its progeny." (Dkt. #69 at 21:17-19). As far is the Court is concerned, then, the Government is aware of its obligations under *Brady* and its progeny, and the possible consequences of noncompliance with *Brady*.

With respect to the materials the defense specifically requests, *first*, the Court finds that "statements made by Tornado Cash users, relayers, token holders, developers, or others connected to Tornado Cash in which the person denies they were engaged in a criminal conspiracy with Mr. Storm or his alleged coconspirators, believed in good faith that their involvement with Tornado Cash was lawful, and/or made statements that support defense theories as articulated in Mr. Storm's various motions," are not *Brady* materials. "The Second Circuit has consistently held that the government does not violate its *Brady* obligations by failing to inform a defendant regarding the testimony of an alleged co-conspirator or other participant. This is because the facts underlying exculpatory testimony by a participant concerning defendant's actions (if that testimony is truthful) should be known by the defendant." *Harris* v. *United States*, 9 F. Supp. 2d 246, 276 (S.D.N.Y. 1998), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) (summary order); *see also United States* v. *Feng Ling Liu*, No. 12 Cr. 934-1 (RA), 2015 WL 4460898, at *16 (S.D.N.Y. July 20, 2015)("It has long been clear that *Brady* is not triggered if a defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence." (internal quotation marks omitted)), *aff'd sub nom. United States* v. *Bandrich*, 636 F. App'x 65 (2d Cir. 2016) (summary order). "If a defendant denies the existence of the conspiracy alleged by the government, or [his] participation in it, the alleged co-conspirators would obviously be desirable defense witnesses (assuming, of course, that the defendant's denial is the truth)." *Feng Ling Liu*, 2015 WL 4460898, at *16 (quoting *Harris*, 9 F. Supp. 2d at 276). The defense requests statements of alleged co-conspirators. These are not *Brady* materials. Therefore, the Court denies this request.

*Second*, the Court finds that "statement[s] made by Chainalysis personnel in which they discuss any errors related to their analysis of Tornado Cash, and/or made statements that support any defense theories articulated in Mr. Storm's various motions, and any and all work product in which the government has relied on Chainalysis for attribution of hacks to the DPRK" are not *Brady* materials.  Contrary to the defense's assertion that "the [G]overnment did not say that it would not rely on Chainanalysis," (Dkt. #130 at 7), the Government has expressly stated that it "does not intend to rely on any Chainanalysis analysis, work product, or attributions at trial."  (Dkt. #136 at 1).  Furthermore, these materials are not "favorable to the defense and material to the defendant's guilt or punishment."  *Jimenez* v. *Stanford*, 96 F.4th 164, 199 (2d Cir. 2024) (internal quotation marks omitted), as the defense requested this information following a report that Chainanalysis "recently acknowledged that it had wrongfully attributed over $300 million to [DPRK] cybercriminals in 2023," (Dkt. #130 at 3), "*after* the relevant period charged in this case" (Dkt. #130-3 at 2).  The Court agrees with the Government that this information is therefore "neither relevant nor exculpatory."  (Dkt. #130-3 at 2).

The Clerk of Court is directed to terminate the pending motion at docket entry 130.

Dated:     March 3, 2025                    SO ORDERED.
           New York, New York

                                            HON. KATHERINE POLK FAILLA
                                            UNITED STATES DISTRICT JUDGE