

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*26 Federal Plaza
38th Floor
New York, New York 10278*

May 21, 2025

**BY ECF & EMAIL**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Roman Storm*, 23 Cr. 430 (KPF)

Dear Judge Failla:

      The Government respectfully submits this letter in response to the defendant's May 16, 2025 letter motion alleging that the Government has not met its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) (the "Motion"). The defendant claims that the Government was required to disclose in this case records that it disclosed in a separate case, *United States v. Rodriguez*, No. 24 Cr. 82 (RMB) (the "*Rodriguez* Disclosures"). The Motion seeks: (1) "any information suggesting that Tornado Cash would not qualify as a 'money transmitting business,' including any communications with [the Financial Crimes Enforcement Network ("FinCEN")];" (2) the *Rodriguez* Disclosures and "any other related *Brady* materials that may have been produced in discovery to the defense [in *Rodriguez*];" and (3) "the date [the] prosecution team [in this case] learned of the information in those disclosures." Those requests should be denied because the records that the defendant seeks contain opinions—not facts—which do not constitute *Brady* material under the law. Even if the informal opinions of two individual FinCEN employees constituted *Brady* material in the *Rodriguez* matter (which they do not), the *Rodriguez* Disclosures are legally and factually irrelevant to this case. And even if the Rodriguez materials were somehow relevant to this case (which they are not), the defense is already in possession of the *Rodriguez* disclosures. And as the Government has already explained to the defense, there are no similar materials in this case.

      The *Rodriguez* Disclosures concern an August 2023 phone call between the prosecutors in that case and two employees of FinCEN. During that call, the two employees stated that they could not predict whether FinCEN's Policy Committee would find that Samourai Wallet, which is a cryptocurrency business at issue in the *Rodriguez* case but not at issue in this case, would qualify as a money services business ("MSB") under FinCEN's regulations. The employees further stated

that, in their opinion, FinCEN guidance "would strongly suggest that Samourai is not acting as a MSB."[1]

On May 8, 2025, the defense sent a letter to the Government in which it requested the disclosures that it now seeks in the Motion. (Motion Ex. C, Dkt. 148-3). On May 12, 2025, the Government sent the defense a letter in which it explained—in detail—why the *Rodriguez* Disclosures are not *Brady* material. A copy of the Government's letter is attached to the Motion. (Motion Ex. D, Dkt. 148-4). The Government will not repeat its arguments in full here, but in short, the Government's letter explained that opinions, including those set forth in the *Rodriguez* Disclosures, do not constitute *Brady* material. (Motion Ex. D, Dkt. 148-4 at 3-5 (citing, *inter alia*, *United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *10 (S.D.N.Y. Apr. 14, 2020) ("The thoughts and impressions of SEC staff concerning its case and investigation are not *Brady* material. The evidence that matters is not an attorney's opinion, but the underlying facts."); *United States v. Redcorn*, 528 F.3d. 727, 744 (10th Cir. 2008) (rejecting *Brady* claim in health insurance fraud case in connection with post-trial disclosures regarding an email by a state insurance official suggesting a corporate officer and shareholder could not steal from his own company because, as a "legal opinion," it was "inadmissible and incorrect"); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25-26 (D.D.C. 1991) (explaining that "[a] particular government attorney's opinion as to the strength or weakness of a NYNEX argument, or as to the clarity or meaning of the decree" is not material to guilt or punishment because it does not "preclude a contrary argument during litigation by the government or bind a court's ruling")). In the Motion, the defendant simply dismisses the Government's position on this issue without citation to any authority and declares that the *Rodriguez* Disclosures are "clearly *Brady*." (Dkt. 148 at 5). That is incorrect for the reasons given in the Government's letter.

Even if the opinions of an agency's staff could constitute *Brady* material (which they do not), the *Rodriguez* Disclosures do not bear on the remaining charges in this case. As described previously and again below, FinCEN's regulations and related guidance are only implicated in a Section 1960 charge that alleges a violation of Section 1960(b)(1)(B), which cross-references 31 U.S.C. § 5330 and its implementing regulations. As set forth in the Government's May 15, 2025 letter to the Court, the Government will not proceed to trial on the first object of the conspiracy charged in Count Two of the Superseding Indictment, alleging a failure to register under Title 18 U.S.C. § 1960(b)(1)(B). (Dkt. 144). Accordingly, the only charge to which the *Rodriguez* Disclosures were even possibly relevant is no longer part of the case.[2]

---

[1] The *Rodriguez* Disclosures can be found embedded in and attached to a letter publicly filed by the defense in *Rodriguez* on May 5, 2025 (the "*Rodriguez* Letter"), which is also attached to the Defendant's Motion in this case. (*See* Motion Ex. A, Dkt. 148-1). Judge Berman, who is presiding over the *Rodriguez* matter, has not yet opined on the significance, if any, of the *Rodriguez* Disclosures and has indicated that he will only do so in the context of deciding any pretrial motions filed in that matter, which are currently due on May 29, 2025. (*See Rodriguez* Dkt. 90).

[2] The defendant asserts that "Government has already expressed its intent to call FinCEN employees as witnesses, and the material at issue is useful for impeachment purposes." (Dkt. 148 at 5-6). However, the Government only intended to call a FinCEN witness to establish that the Tornado Cash service had not registered with FinCEN, which testimony would have been relevant

The *Rodriguez* Disclosures are irrelevant to the remaining object of Count Two, under 18 U.S.C. § 1960(b)(1)(C), which criminalizes the knowing transmission of crime proceeds. The *Rodriguez* Disclosures set forth the opinion of two FinCEN employees regarding the application of FinCEN guidance to Samourai Wallet. The very title of the relevant FinCEN guidance makes clear that it is about the "Application *of FinCEN's Regulations* to Certain Business Models Involving Convertible Virtual Currencies." May 9, 2019 FinCEN Guidance at 1 (emphasis added). But the question under Section 1960(b)(1)(C) is not whether the Tornado Cash service is an MSB and therefore required to register *under FinCEN regulations*; the question is whether it is a "money transmitting" business *as defined in Section 1960(b)(2)*. And indeed, the FinCEN employees did not opine in the Samourai Wallet case about the knowing transmission of criminal proceeds; their opinion was expressly about FinCEN's regulations as interpreted in FinCEN's guidance. The Court recognized this distinction when it denied the defendant's motion to dismiss. (*See* Sept. 26, 2024 Hearing Tr. at 20:16-18 (stating, with regard to the defendant's position that "the definitions of 'money transmitting' in Sections 1960 and 5330 are co-extensive," that "I do not believe that to be the case"); *see also* Gov. Opp. to MTD, Dkt. 53 at 19 & n.4 (describing the distinction between the definitions applicable to Section 1960(b)(1)(B) and 1960(b)(1)(C) in detail); May 9, 2019 FinCEN Guidance at 1 (purpose of guidance is to "remind persons subject to the Bank Secrecy Act (BSA)"—*i.e.*, not Section 1960 (b)(1)(C)—about "how FinCEN regulations relating to money services businesses (MSBs) apply to certain business models"). The defendant does not—because he cannot—even attempt to square the Court's prior holding with his position in the Motion.

Similarly, regarding Count One, which charges a money laundering conspiracy under 18 U.S.C. § 1956(h), the defendant argues that "if Tornado Cash is not [an MSB], then it does not fit *one of the definitions* of a 'financial institution' relied upon by the government." (Motion at 7) (emphasis added). That issue is also no longer relevant to this case, however. In light of its decision not to proceed on the (b)(1)(B) prong of Count Two and in an abundance of caution regarding the definition of "financial institution" in the money laundering statute, the Government also does not intend to proceed on its "financial institution" theory of Count One. But that does not mean that there is nothing left of Government's money laundering conspiracy count; rather, the Government also alleges that the financial transactions affected interstate or foreign commerce and involved the movement of funds by wire or other means. 18 U.S.C. § 1956(c)(4)(A); *see* Dkt. 53 at 37 ("But even assuming *arguendo* that the Court were to accept the defendant's arguments on Count Two and hold, as a matter of law, that the Tornado Cash service was not a money transmitting business, that would form no basis to dismiss the money laundering count."). The Court recognized this alternative money laundering theory in its order denying the defendant's motion to dismiss and suggested that the Government may have needed to "clean up confusion in a superseding charging instrument" with respect to that theory—which the Government did by obtaining the Superseding Indictment. (*See* Sept. 26, 2024 Hearing Tr. at 26).

Beyond these legal flaws in the defendant's argument, there are fatal factual problems, as well. The *Rodriguez* Disclosures are not factually relevant to this case. In no way can they constitute *Brady* material as to the defendant's Tornado Cash service because the two FinCEN employees provided their informal opinion in response to a fact-specific description of how

---

only to the Section 1960(b)(1)(B) object of Count Two. Accordingly, the Government no longer intends to call a witness from FinCEN.

Samourai Wallet operated that was provided to them by the Government. Tornado Cash simply was not part of the conversation. While Samourai Wallet and the Tornado Cash service may share some superficial similarities, they operated quite differently. Much as he has all along, the defendant says that the Court need only focus on the fact that both Samourai Wallet and Tornado Cash had non-custodial elements, and repeats arguments that have been extensively briefed and that this Court has already rejected about the supposed lack of control over the funds deposited in these services. The details matter. So even if the informal opinions of two FinCEN staff members might potentially bear on whether the defendants in the *Rodriguez* case had a good faith belief that their mixing service did not need to register with FinCEN or implement anti-money laundering controls (*see Rodriguez* Dkt. 89 at 2), it does not follow that those opinions somehow bear on the defendant's understanding of the need for his mixing service to be federally registered and compliant.

As for interactions with FinCEN in this case, there were no such interactions comparable to those described in the *Rodriguez* Disclosures. As the Government has repeatedly explained to the defense in this case, the Government has neither sought nor obtained an opinion from any employee at FinCEN—or any other government agency—regarding whether the Tornado Cash service is subject to registration obligations. Such an opinion—especially an informal opinion offered by employees who expressly disclaim to be speaking for the agency—would not be legally admissible and would not constitute *Brady* material. That is all the more so now that the Government has informed the defense and the Court that it does not intend to proceed on any theory premised on the defendant's failure to register with FinCEN as a MSB.

In sum, the Motion should be denied because, as the Court concluded about the defendant's last request for purported *Brady* materials, the Motion seeks records that are "neither relevant nor exculpatory." (Dkt. 137 at 5 (denying the defendant's motion at Dkt. 130) (internal quotation marks omitted)).

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Benjamin A. Gianforti
Thane Rehn
Ben Arad
Assistant United States Attorneys
(212) 637-2490

Kevin Mosley
Special Assistant United States Attorney

cc: Brian Klein, Esq., Keri Axel, Esq., & David Patton, Esq. (by ECF & email)