

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza*
*38th Floor*
*New York, New York 10278*

July 11, 2025

**BY ECF & EMAIL**
The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Roman Storm*, 23 Cr. 430 (KPF)

Dear Judge Failla:

    The Government respectfully writes to seek clarification regarding one of the orders issued by the Court at the final pretrial conference in this matter on July 8, 2025.

    Specifically, the Court indicated that the defendant could introduce testimony regarding "[o]ther cryptocurrency mixing services" as "probative of the defendant's intent regarding the implementing of an ineffective versus an effective measure," ostensibly to the extent that the implementation of such measures was according to "industry standard." *See* Tr. at 131:1-8. The Government seeks clarification of this ruling on the following grounds. First, there is no evidence that a "cryptocurrency mixing services industry" existed during the relevant period as a defined category, and none of the defendant's experts have suggested that such an industry existed or attempted to define such an industry. Second, even if it could be said that there was a "cryptocurrency mixing services industry," the Government respectfully submits that defining the relevant industry in that way does not provide the reasonable benchmark against which to judge the defendant's actions that the Court contemplates. Third, depending on the nature and scope of the evidence the parties are allowed to adduce with respect to this purported industry, it will be of limited probative value and could easily devolve into a confusing trial within a trial with respect to the Tornado Cash service's "peers" within the "industry." Fourth, it is not clear what evidence either party will be allowed to introduce given the lack of any reference to a "cryptocurrency mixing services" industry in the defendant's expert disclosures and the Court's other rulings.

    A significant obstacle to using the term "cryptocurrency mixing services" as a relevant definition of an identifiable "industry" is that, at least during the relevant period, many if not most of the Tornado Cash service's peers or competitors in that space have been the subject of criminal prosecutions themselves or were otherwise shut down by law enforcement. *See, e.g., United States v. Rodriguez*, No. 24 Cr. 82 (DLC), (S.D.N.Y.) (prosecution of operators of Samourai Wallet mixing service); *United States v. Sterlingov*, No. 22 Cr. 399 (D.D.C. 2024) (conviction at trial to conspiracy to commit money laundering and operating an unlicensed money transmitting business

and other crimes for operating the mixer Bitcoin Fog); *United States v. Harmon*, No. 19 Cr. 395 (D.D.C. 2021) (guilty plea to money laundering for operating the Helix mixer); Chipmixer (2023) (shut down by European and U.S. law enforcement for money laundering); Blender.io (sanctioned in 2022 for ties to North Korean hackers); Bestmixer.io (2019) (shut down by European law enforcement for money laundering).

In addition, the term "cryptocurrency mixing services" to define an "industry" is not one that even the defense has adopted or suggested it would use its experts to describe. In its *Daubert* briefing, the defense referred more generally to the "cryptocurrency industry," a term that includes a wide range of types of companies and services. (Dkt. 176 at 25). One of the defendant's proposed experts, Dr. Green, also used the term "privacy-preserving cryptocurrency blockchains," Dkt. 176-1 at 3, but that is a much broader category that includes blockchains and protocols that are not mixers. *Id*. (referencing the Zcash and Monero blockchains and the Railgun protocol). In addition, Dr. Green's only apparent opinion about such "privacy-preserving cryptocurrency blockchains" is that they are supposedly "designed to protect legitimate users," which is exactly the sort of improper legal opinion the Court has recognized is inadmissible. In short, no defense witness has indicated that a "cryptocurrency mixing services" industry existed during the relevant period, much less attempted to identify the participants in any such industry. Nor has any defense expert attempted to articulate an "industry standard" for a "cryptocurrency mixing services" industry.

If the defendant is permitted to put on evidence regarding Tornado Cash's so-called peers, defined in the manner suggested by the Court at the pretrial conference, then the Government should be permitted to put on evidence of those peers' illegality, which will invite a trial within a trial with respect to each such mixer and serve to distract, confuse, and waste the time of the jury. *Cf. Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) ("Admitting evidence about previous cases 'inevitably results in trying those cases before the jury,' and 'the merits of the other cases would become inextricably intertwined with the case at bar.'"). Furthermore, the Government agrees with the Court that the defense may well use testimony regarding this supposed "industry" to "back-door[ the ultimate issue] through presenting it in terms of industry practice." *Id*. at 138:15-16. Indeed, such evidence would invite little more than an impermissible "everyone was doing it" defense that courts routinely reject. *United States v. Connolly*, No. 16 Cr. 370 (CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019); *see also United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019).

In summary, opening the door to evidence about the standard practice in the purported "cryptocurrency mixing services" industry runs the risk of confusing the jury and unnecessarily prolonging the trial to accommodate evidence of marginal relevance and questionable probative value. The Government does not object to cross-examination of its technical expert regarding the feasibility of any changes to Tornado Cash that he discusses and the degree to which a software developer would have been likely to know how to implement such measures, which appears to be the issue the Court is focused on. However, couching such inquiries in terms of a supposed "industry standard" for an industry that has not been defined and that largely consisted of criminal entities during the relevant time period would inevitably cause unfair prejudice, confuse the issues,

mislead the jury, and waste time at trial.[1] Accordingly, the Government seeks clarification of the Court's ruling so that the parties will be aware of the limits and how to operate within them.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By: _____
    Ben Arad
    Thane Rehn
    Benjamin A. Gianforti
    Assistant United States Attorneys
    (212) 637-6521
    (212) 637-2490
    (212) 637-2354

    Kevin Mosley
    Special Assistant United States Attorney

---

[1] Relatedly, the Government respectfully requests that the Court curtail any attempt to elicit testimony regarding measures that may or may not have been understood by, or available to, an actor in the "cryptocurrency industry" writ large. Such a broad category would include a wide variety of actors and functions that vary greatly from each other, and from the conduct at issue here, and would be of marginal relevance to determining the defendant's state of mind. To the extent the Court is inclined to allow the defendant to elicit such testimony, the Government should be permitted to elicit testimony as to how the industry is defined, which actors comprised the industry at that time, and the use of or involvement by such actors in illicit conduct. To the extent the defendant seeks to introduce such testimony through an expert witness, the defendant should be required to provide the Government a supplemental expert disclosure.