

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

July 17, 2025

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>*Via ECF*</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we write in opposition to the government's July 16, 2025 letter motion seeking (1) a ruling on its motion *in limine* to exclude evidence and arguments regarding privacy rights , and (2) the preclusion of testimony from defense expert Dr. Matthew Green regarding high-profile criminal incidents involving cryptocurrency. (Dkt. 204 ("Mot.").) The government bases its motion on comments in the defense opening statement, but the defense opening statement was not in any way improper.

The defense discussion of privacy in the opening and throughout this trial is perfectly consistent with this Court's prior rulings about the relevance and admissibility of "why people might like privacy" and the "lawful uses of Tornado Cash . . . to rebut the government's evidence regarding Mr. Storm's mental state." (7/8/2025 Tr. 15:22, 130:14-20.) Indeed, the government elicited testimony from one of its own witnesses about the need for privacy on the blockchain. The defense does not intend to make arguments to the jury aimed at jury nullification; specifically, the defense will not argue that Mr. Storm's conduct is legally protected or that an inherent right to privacy trumps this Court's legal instructions. The defense use of "right to privacy" in the opening did not convey that argument and did not say that the "right to privacy" negates criminal liability. But the defense must be permitted to present evidence and arguments regarding the many legitimate needs for privacy and why Mr. Storm's intent to protect privacy did not equate to criminal intent.

As for Dr. Green, this Court did not before, nor should it now, limit his testimony regarding criminal incidents that show the need for privacy in cryptocurrency transactions.

The relief the government seeks is unwarranted and should be rejected.

- **Background**

Before trial, the government brought a motion *in limine* to preclude evidence and arguments regarding free speech and privacy rights. (Dkt. 157 at 48-49.) The government's expressed concern was that the defense would make legal arguments that Mr. Storm's conduct was legally protected by the First Amendment and constitutionally protected privacy rights, which the government contended would be arguments for jury nullification. (*Id.* at 48.)

In response, the defense explained to this Court :

> It is not necessary for this Court to enter a blanket order prohibiting discussions of free speech and/or privacy rights. (*See* Gov't MILs at 48-49.) Mr. Storm does not intend to make arguments aimed at jury nullification. And he does not intend to introduce or make any arguments to the jury about free speech. However, if Mr. Storm testifies, he may decide to discuss privacy, which is an issue that is essential to discussing the background and context of the Tornado Cash project. *Discussion of privacy is additionally vital to a key element of each charged offense: intent*.

(Dkt. 174 at 45 (emphasis added).) The defense concluded that it "should be allowed to present evidence and arguments about privacy as background and as related to his state of mind." (*Id.* at 46.)

At the outset of the pretrial conference, this Court made clear that witnesses could address privacy: "so, I'm fine if you want to ask your witness why people might like privacy or why certain things exist, and what are uses of certain tools or protocols within Tornado Cash or something else." (7/8/2025 Tr. at 15:21-24.) With respect to the government's motion *in limine*, this Court stated, "Free speech and privacy rights, I understand those aren't being discussed. If he testifies, Mr. Storm can discuss his beliefs about the importance of privacy." (*Id.* at 130:21-23.) Notably, this discussion came directly after this Court's ruling that the defense could introduce evidence of the "[l]awful uses of Tornado Cash." (*Id.* at 130:14.) As this Court explained, "[i]t is admissible to rebut the government's evidence regarding Mr. Storm's mental state in designing, maintaining, and controlling Tornado Cash." (*Id.* at 130:18-20.)

With respect to Dr. Green, this Court denied the government's motion to exclude his testimony. (*Id.* at 138:5-139:9.) This Court did not restrict in any way testimony regarding high-profile criminal incidents, even though Dr. Green's disclosure made reference to such incidents. The only restriction placed on Dr. Green's testimony was that he (like other witnesses) would not be allowed to opine that certain activities were "legal" or "legitimate" because this Court concluded that would be rendering opinions on questions of law. (*Id.* at 138:9-12.)

- **The Defense Did Not Make Any Improper Comments Regarding Privacy Rights and Should Be Permitted To Introduce Evidence and Make Arguments Regarding the Legitimate Need for Privacy**

The government suggests that the defense opening statement ran afoul of the defense's representations to this Court and improperly invited the jury to nullify based on privacy rights. (Mot. at 2.) The defense disagrees.

The portion of the defense opening statement at issue is:

> What do I mean when I say financial privacy? Well, it is the right to keep your financial transactions private from the public and this is a right that many of us just simply take for granted. How would you feel if someone took your bank account and published it on the internet and everyone could see it? They could figure out maybe where you shop, what you like to eat, how much money you have in your account. Maybe even where your kids go to school. You would not feel very safe and you certainly would feel—

(7/15/2025 Tr. at 69:2-11).

This was not an appeal for jury nullification. The defense was not suggesting that Mr. Storm should be found not guilty because his conduct is protected by legally recognized privacy rights. The defense discussed a "right" to privacy in the colloquial sense that everyone has an interest in keeping their financial transactions private. That is not the same as saying there was some legal right to privacy that shielded Mr. Storm from prosecution.[1]

The defense's remarks were aimed at exactly what the defense had flagged in its opposition to the government's motion *in limine*—that privacy is "vital to a key element of each charged offense: intent." (Dkt. 174 at 45.) Specifically, the fact that there is a legitimate need for privacy explains why Mr. Storm's development of Tornado Cash as a way to protect financial privacy does not reflect any criminal intent.

It bears pointing out that the government itself has repeatedly opened the door to discussions about privacy. For example, the government elicited testimony about privacy from Justin Bram. (*See, e.g.,* 7/16/2025 Tr. 208:23-209:7, 220:10-21.) As the government's own trial presentation reflects, it is impossible to talk about Tornado Cash without talking about privacy.

---

[1] Consistent with this Court's instructions, defense counsel also reminded the jury that her comments were not evidence. (7/15/2025 Tr. at 67:9-10.)

- **Dr. Green Should Be Permitted To Testify Regarding Criminal Incidents Resulting from the Lack of Privacy in Cryptocurrency Transactions**

The government also complains that the defense opening statement alluded to evidence of high-profile examples of people being kidnapped and extorted, recognizing that Dr. Green's expert disclosure made reference to "dangerous gangs" and "people being threatened, harmed, and even kidnapped by bad actors attempting to take their cryptocurrency." (Mot. at 2 (quoting Dkt. 159-2 at 5).) The defense opening was well within the four corners of Dr. Green's disclosure. This Court's previous ruling allowing Dr. Green's testimony was correct, and this Court should adhere to it.

On this topic, Dr. Green's disclosure stated:

> [T]here are various risks associated with cryptocurrency blockchains that lack privacy (*e.g.*, Bitcoin and Ethereum). As their native cryptocurrencies have become more widely adopted (*e.g.*, BTC and ETH) and often part of mainstream financial services offerings, privacy concerns and risks have only become heightened. For example, bad actors can (1) hack into a user's wallet address and steal cryptocurrency; (2) target a user for fraud; and (3) extort a user and physically hurt that user and others, like their family. These concerns and risks are not theoretical, and there are instances of dangerous gangs engaged in cryptocurrency-stealing home invasions and people being threatened, harmed, and even kidnapped by bad actors attempting to take their cryptocurrency.

(Dkt. 176-1 at 3.)

This Court specifically found that Dr. Green's "testimony regarding privacy features can be reliably applied to the facts of the case, and it is probative of whether certain of defendant's conduct evinces a criminal intent or some other intent." (7/8/2025 Tr. at 138:6-9.) This Court recognized (correctly) that privacy is central to the element of intent. Dr. Green's anticipated testimony regarding criminal incidents goes directly to an important reason why privacy in cryptocurrency transactions has legitimate purposes.

The only limitation this Court placed on Dr. Green's testimony was that he may not testify (as no witness can) about what is "legal" or "legitimate." (*Id.* at 138:9-12.) Nothing about Dr. Green's testimony regarding high-profile criminal incidents bears on that issue. Rather, it is simply part of his explanation as to why privacy features are important to non-criminal users of Tornado Cash. This testimony rebuts the government's suggestion that Mr. Storm's implementation of privacy features on Tornado Cash reflects criminal intent.

The government also argues that the evidence will be inflammatory and will invite jury nullification. Again, the defense will not be arguing for jury nullification. The fact that there

Hon. Katherine Polk Failla<br>
July 17, 2025<br>
Page 5 of 5

have been numerous high-profile incidents of criminals seeking to obtain individuals' cryptocurrency does not in any way suggest that the jury should acquit Mr. Storm out of sympathy for the victims of these crimes.[2] Again, one of the key reasons for cryptocurrency privacy is to protect its users from criminals preying on them.

Finally, the government suggests in the alternative that this Court require the defense to "provide prompt notice of such 'high profile examples' of any criminal activity it intends to elicit from Green, the date of any such incidents, and the basis for an argument that they would bear on Storm's state [of] mind during the charged time period." (Mot. at 3.) This notice goes far beyond the notice required by Rule 16. As this Court found, the defense's expert witness disclosures were adequate under Rule 16. (7/8/2025 Tr. 137:21-138:4.) Any further disclosure is neither required nor necessary.

* * *

This Court should deny the government's letter motion.

Respectfully submitted,

*/s/ Brian E. Klein*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Christopher Morel
Hecker Fink LLP

*Attorneys for Roman Storm*

---

[2] Although we do not believe it necessary, the defense would not object to a limiting instruction to the effect of: Members of the jury, the testimony you have heard about cryptocurrency-related crimes is not being offered for the truth of those crimes but as support for Dr. Green's opinion that there was a real need for tools that enhance privacy in cryptocurrency transactions.