

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

July 22, 2025

Brian E. Klein
Direct (424) 652-7814
bklein@waymakerlaw.com

*Via ECF*

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we write to request exclusion of a portion of the testimony of government expert IRS-CI Special Agent Stephan George. Specifically, the defense seeks to exclude anticipated testimony regarding supposed tracing of Hanfeng Lin's funds to Tornado Cash. This proposed testimony was first disclosed to the defense late in the evening on Sunday, July 20, 2025.  It is significantly outside the subject matter and scope of his disclosure, and is inadmissible  under *Daubert* because Agent George is not qualified to do this sort of tracing and his methodology is unsound and not an accepted methodology for attribution in the field of blockchain tracing.

- **The Government's Mid-Trial Disclosure Is Prejudicial to the Defense**

The government provided its expert witness disclosure regarding Agent George's proposed testimony on or about February 18, 2025. (Ex. 1.) In that disclosure, the government stated that Agent George would be offering opinions related to the source of funds for Mr. Storm's purchase of three specific assets. (*Id.* at ¶ 4.) Specifically, the government disclosed that Agent George would trace the flow of funds from the purchase of the assets back to cryptocurrencies derived from TORN, Tornado Cash withdrawals, and/or funds derived from Multisender. (*Id.*) Agent George's disclosure said nothing about tracing the proceeds of hacks and frauds, much less the funds from Ms. Lin. Indeed, the government noticed a different witness to conduct precisely that sort of tracing: FBI Special Agent Joel DeCapua.

Based on this February disclosure, the defense moved to exclude Agent George's testimony as irrelevant, inadmissible pursuant to Rule 403, and inadmissible pursuant to Rule 404(b). (Dkt. 158 at 24-34.) Naturally, the defense did not raise any *Daubert* or other issues relating to opinions regarding the tracing of any victim funds to Tornado Cash because no such opinions were disclosed to the defense. The Court denied the defense motion to exclude Agent George's testimony at the pretrial conference on July 8, 2025.

Hon. Katherine Polk Failla
July 22, 2025
Page 2 of 7

The first time the government disclosed that Agent George would testify regarding tracing of Ms. Lin's funds to Tornado Cash was in a supplemental disclosure dated and disclosed late in the evening of Sunday, July 20, 2025, while Agent DeCapua was in the middle of his direct testimony. (Ex. 2.) On Monday, July 21, 2025, after the defense challenged the relevance of Ms. Lin's testimony and raised the possibility of a mistrial based on Agent DeCapua's failure to trace her funds to Tornado Cash, AUSA Rehn represented to the Court that Agent George had conducted a tracing analysis, based on a BlockTrace report that showed that Ms. Lin's funds had gone to Tornado Cash after "a few short hops." (7/21/25 Tr. at 76-77.)[1]

AUSA Rehn claimed that the government had asked their "block trace team" to do the tracing "[b]ased on the colloquy the parties had at the pretrial conference [on July 8, 2025]." But no 3500 material disclosed to the defense reveals any such discussions with Agent George (or anyone else) regarding tracing Ms. Lin's funds between July 8, 2025 and July 20, 2025. In fact, 3500 material just disclosed today, Tuesday, July 22, 2025, reflects the government communicating with Agent George today about press articles reporting on the failure of Agent DeCapua to trace Lin's funds to Tornado Cash and the defense suggestion of a possible mistrial. (*See* Exs. 9 and 10.) It is clear that the government is belatedly trying to fill a crucial gap in Agent DeCapua's testimony through Agent George's testimony.

The government's mid-trial disclosure of Agent George's proposed opinion regarding the purported tracing of Lin's funds is improper and prejudicial to the defense. The reason for the Court's order requiring pretrial disclosures of expert witness testimony over the defense objection was so that the parties could raise *Daubert* and other objections to that testimony in advance of trial and with sufficient time for the Court to consider the objections, and with sufficient time to prepare responses. The defense was deprived of that opportunity because it was blindsided with this new opinion being offered by Agent George.

- **Agent George Is Not Qualified To Testify Regarding Tracing of Purported Victim Funds**

Agent George was offered as an accounting expert who could trace the source of funds for Mr. Storm's asset purchases. (Ex. 1.) As his CV reflects (Ex. 3), he is an IRS agent with an accounting background, whose initial responsibility was to identify the source of funds for certain assets purchased by Mr. Storm, from accounts associated with Mr. Storm through other traditional indicia of ownership, such as customer information. While his accounting background might have provided him the expertise to conduct the analysis he was retained to do, it does not qualify him to testify regarding the tracing of cryptocurrency criminal proceeds which the government is now proposing, which includes not only tracing but also attributing control

---

[1] In fact, the tracing of Ms. Lin's funds to Tornado Cash involved far more than "a few short hops." The BlockTrace report underlying Agent George's tracing opinion actually involved many different addresses over an approximately one-month period and involved the commingling with other victims' funds over multiple hops. (*See* Exs. 7 and 8 (BlockTrace report and spreadsheet disclosed on Tuesday, July 22, 2025).)

over various wallet addresses to the alleged hacker, where the identification of accounts is at issue.

In order for an expert to be qualified to testify on a particular subject under Rule 702, their "training and experience" must be "closely related to the area to the proposed testimony." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013). As such, "[a]n expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *Arista Records LLC v. Lime Group LLC*, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (internal citations omitted)).

Agent George does not have the training or expertise to offer the government's newly disclosed opinions. According to 3500 material produced by the government, Agent George "had no formal cyber training outside of what IRS provided to him and the SANS 301 course, which was called Intro to Cyber Security." (Ex. 4.) He has not even completed the basic Chainalysis/TRM course. (*See* Exs. 3 and 4.) While Agent George claims to have been recognized by the IRS as a subject matter expert on blockchain tracing, virtual currency, and virtual currency money laundering, he identifies no blockchain tracing training at all. (Ex. 3.) In fact, Agent George has only been assigned to the IRS's National Cyber Crimes Unit since November 2024, which is not sufficient time for him to gain the relevant experience. (Ex. 1 at 1.) Significantly, he has never testified as an expert. (Ex. 4.)

Indeed, if the government had believed that Agent George was qualified to offer opinions about tracing of cryptocurrency criminal proceeds, then it would have had no need to have Agent DeCapua do that analysis. The contrast between Agent DeCapua's qualifications and Agent George's qualifications is telling. Agent DeCapua has been an FBI Special Agent working in cyber crimes for over 10 years, with more than four years of experience as a Supervisory Special Agent in the FBI's Cyber Division, where he had a "focus on the laundering of proceeds from network intrusions and ransomware incidents through the use of cryptocurrency." (Ex. 5 at 1.) He has "conducted cryptocurrency tracing and blockchain analysis in numerous investigations." (*Id.*) He also has completed training and certification on numerous topics relating to forensics and hacking. (Ex. 6.) Agent George, in contrast, is simply not a blockchain tracing expert, and he should not be permitted to testify as one.

- **Agent George's Methodology Is Unreliable**

Federal Rule of Evidence 702 requires that an expert's opinion be "the product of reliable principles and methods" and that it "reflects a reliable application of the principles and method to the facts of the case." The Court's "gatekeeping role" is to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-80 (1993).

Agent George's methodology for his purported tracing of Ms. Lin's funds does not meet the standard for reliability under Rule 702 and *Daubert*. The flow of cryptocurrency that he attempts to trace is extremely convoluted, involving numerous co-mingled deposits and withdrawals across 10 different wallets. After 10 "hops" of co-mingled funds, one wallet makes a deposit to

Tornado Cash, but there is utterly no reason to assume, as Agent George seems to, that that wallet was under the control of anyone associated with the scam of Ms. Lin. Indeed, there is good reason to believe it is not.

Agent George's methodology ignores the timing and complexity of transaction activity across many addresses over an approximately one-month period while being commingled with other funds from myriad sources. Many of these addresses have voluminous transaction activity – including one address **through which approximately $1.5 billion has flowed in and out through over 5,000 transactions**. That level of activity often indicates that the address is associated with a service such as a centralized or decentralized exchange, over-the-counter exchange, or large investment company, meaning the owner of the receiving wallet from that service likely had nothing at all to do with the scam of Ms. Lin.

Agent George utterly ignores the likelihood of changes of ownership. Nearly all of the intermediary addresses are unidentified/unattributed, which means the scammer could have made a purchase with the funds, and Agent George is then following the seller's fund flow instead. Perhaps more realistically, the scammer could have transferred the funds to a money laundering service that converts illicit crypto to fiat (or other crypto) off-chain.

This is a complex tracing path, and no qualified investigator employing reliable methods would attribute the funds deposited to Tornado Cash to Ms. Lin's scammers. Of course, if one traces funds long enough, nearly all funds can be attributed to some origin of one's choosing. But that is not a remotely acceptable way to reach a conclusion about attribution.

Lastly, Agent George purports to have used the LIFO (last-in-first-out) method to trace Ms. Lin's funds to Tornado Cash. (Ex. 2.) But LIFO is not used for the purpose of tracing and attributing cryptocurrency across multiple transactions. Attribution is the process of linking digital asset activity to people, entities, or real world property. This process is conducted to ascertain who owns or controls a specific wallet address, and to establish who is responsible for the associated assets and transactions.

In contrast, LIFO is a cost basis methodology used for accounting and tax reporting purposes. *See, e.g., Nat'l Lead Co. v. Comm'r,* 336 F.2d 134, 135–36 (2d Cir. 1964) (explaining use of LIFO in tax case). When an individual sells or swaps cryptocurrency, a taxable event occurs. To determine whether any capital gains were realized, and the corresponding tax implication, a cost basis methodology must be employed.[2] Similarly, LIFO is a cost basis methodology commonly used in securities fraud contexts to determine loss amounts. *See, e.g., Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019); *Gabor v. Transocean Ltd.,* No. 24 CIV. 9964 (AT), 2025 WL 1181845, at *2 (S.D.N.Y. Apr. 23, 2025). Understanding the cost basis for an acquired cryptocurrency is incredibly important for accounting purposes, but it is not useful for attribution. This is because it does not provide insight into who owns or controls a wallet or the corresponding digital assets.

---

[2] It should be noted that LIFO is not even the default method for conducting a cost basis analysis – FIFO is.

Agent George does not even faithfully apply LIFO methodology. According to his method, the ordering of funds should carry forward with each "hop." That is, if a batch of funds from multiple sources is sent from Account 1 to Account 2, a portion of which are then immediately withdrawn, the first funds to be withdrawn from Account 2 would be the portion of those funds most recently deposited into Account 1. But Agent George's tracing reorders the victim's funds to the top (*i.e.*, to the "last-in" placement) when they are transferred from one address to the next, such that in the previous example, the first funds withdrawn from Account 2 are the *victim's funds* no matter when they were deposited relative to the other funds. As an example of why this method is illogical, if one were to trace funds from multiple victims separately, one could easily end up attributing more funds to a given withdrawal than were actually withdrawn.

In sum, Agent George's methodology is fatally flawed, and the Court should exercise its gatekeeping role and exclude this opinion from Agent George's testimony.

- **Agent George's Proffered Testimony Concerning the NFT Capital Hack Is Not Within the Scope of His Disclosure and the Defense Has Not Had Sufficient Time to Respond**

Agent George disclosed opinions concerning the source of funds of three alleged asset purchases by Mr. Storm and certain sales of Founders' Torn. These areas were subject to defense rebuttal opinions, and motions were already litigated before this Court.

The defense has not objected to a single revised disclosure by the government's agents, as they were updates or additions that concerned the general subject matter of the disclosed testimony, but the proposed testimony allegedly tracing Ms. Lin's funds is something totally different, which is not even arguably within the four corners of Agent George's disclosure. It should be excluded on this basis.

Further, the defense has had insufficient time to respond to what is a complex tracing analysis, and has not even been given sufficient materials from Agent George to support his purported opinions. While Agent DeCapua provided 40 folders of materials, including significant Etherscan data and summarizing spreadsheets, Agent George has a demonstrative slide and a short summary spreadsheet. While there are 11 hops to different addresses between the steps of his analysis, he has provided the underlying data for none of those addresses. The defense simply does not have the material it needs to determine the basis for his opinions and prepare to cross-examine them.

- **The Court Should Also Preclude Agent George's Testimony Pursuant to Rule 403**

In addition to all the reasons for excluding Agent George's testimony discussed above, the Court should also exclude his testimony under Federal Rule of Evidence 403. Agent George's testimony regarding his purported tracing of Ms. Lin's funds, if admitted, would be unduly prejudicial and likely to mislead and confuse the jury insofar as it will suggest the funds were

traced directly to Tornado Cash and/or that Special Agent George is qualified to trace on the blockchain and did as much work as Special Agent DeCapua did, when he is not so qualified and did not perform the same level of work, based on the disclosures made to date.

- **The Government Should Be Required to Provide Discovery, Including *Brady* Material, to the Defense**

In addition, it appears that the government has not disclosed important discovery, including *Brady* material, on the issue of the purported tracing of Ms. Lin's funds to Tornado Cash. Specifically, the government referenced in court a BlockTrace report showing "a few hops" to Tornado Cash. On Monday, July 21, 2025, the defense requested all BlockTrace reports Agent George relied on. On Tuesday, July 22, 2025, the defense followed up on its request for the BlockTrace materials and also made a specific *Brady* request for all materials related to the tracing of Ms. Lin's funds.

In response to the defense requests, the government provided BlockTrace materials today but has not yet responded to the defense's *Brady* request. The defense clarified that its *Brady* request includes "all communications involving SA George, SA DeCapua and/or other law enforcement officials regarding tracing Lin's crypto at issue, any other information regarding the tracing of it undertaken by law enforcement, and any communications with BlockTrace about Lin." The defense also asked that the government "inquire with SA George, SA DeCapua and BlockTrace and confirm they've provided all of their communications regarding this matter."

The defense believes there is *Brady* material and other relevant discovery relating to the tracing of Ms. Lin's funds. It appears from the government's own representations that it became concerned about the failure of Agent DeCapua to trace Ms. Lin's funds to Tornado Cash after he had already taken the stand. The defense requests that the Court order the government to immediately disclose any relevant discussions and findings about this issue that have not been disclosed.

/ / /

/ / /

/ / /

Hon. Katherine Polk Failla<br>
July 22, 2025<br>
Page 7 of 7

\*\*\*

For all the foregoing reasons, this Court should not permit Agent George to testify regarding his supposed tracing of Ms. Lin's funds to Tornado Cash. The defense maintains all of its prior objections to Agent George's testimony. The defense also requests that the Court order the government to produce all relevant discovery on this topic to the defense immediately.

Respectfully submitted,

*/s/ Brian E. Klein*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Christopher Morel
Hecker Fink LLP

*Attorneys for Roman Storm*