

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

July 27, 2025

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>Via ECF</u>

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:    United States v. Storm, 23 Cr. 430 (KPF)**

Dear Judge Failla:

On behalf of our client, defendant Roman Storm, we write to respectfully request that this Court admit into evidence the defense exhibits attached as Exhibits 1 through 5. All of these exhibits contain statements of Mr. Storm and others that provide necessary context for other statements or portions of statements that were admitted in the government's case and also reflect the then-existing state of mind of Mr. Storm and others. As such, these exhibits are admissible under the rule of completeness doctrine pursuant to Federal Rule of Evidence 106 and the state of mind exception under Federal Rule of Evidence 803(3). The defense has met and conferred with the government regarding these exhibits but has not been able to reach agreement as to their admissibility.

The defense was unable to raise these issues earlier in large part because right until the government rested its case, the government was providing constant updates and changes to the various exhibits it had marked, many of which were the subject of the parties' discussion on Rule 106 issues, but which the government ultimately did not seek to admit. For example, the parties met and conferred extensively on rule-of-completeness issues regarding GX 1374, as well as a duplicate reflected in GX 2248, both of which the government indicated it would seek to admit but ultimately did not—in the case of GX 2248, the morning it rested.

Further, in discussing the defense's motions *in limine* at the pretrial conference on July 8, 2025, this Court inquired about the defense's intent to introduce "Mr. Storm's statements on their own, not as part of a rule of completeness issue." (7/8/25 Tr. 84:7-14.) In response, the defense noted that it was "focused on rule of completeness" but that admission based on state of mind was "an alternative if we didn't get a rule of completeness ruling that way." (*Id.* Tr. 84:16-23.)[1] In other words, the defense, without having reviewed the entirety of the government's proposed exhibits

---

[1] This Court later stated: "I'm understanding from the defense that there is no present contemplation of admitting stand alone statements." (*Id.* Tr. 126:24-127:1)

(many of which the government did not seek to admit), anticipated at that time that most issues would be resolved under Rule 106 but reserved its right to seek admission of Mr. Storm's statements on other bases.

Finally, with regard to authenticity, Exhibits 1 and 2 reflect Dragonfly's Telegram communications, which this Court has authenticated as business records. (*See* Dkt. 201.) Exhibits 3 and 5 reflect chats derived from the contents of what is alleged to be Alexey Pertsev's phone. While the defense maintains its objections as to the authenticity of any materials derived from what is alleged to be Mr. Pertsev's phone, this Court has ruled that such contents can be authenticated and admitted subject to connection, and Exhibits 3 and 5 should thus be authenticated pursuant to this Court's order. (7/17/2025 Tr. 466:23-467:5.) Exhibit 4 is subject to the parties' stipulation regarding the authenticity of publicly available materials. *See* GX S-3.

- **Legal Standards Pertaining to the Rule of Completeness (Fed. R. Evid. 106)**

Rule 106, codifying the rule of completeness, provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. *The adverse party may do so over a hearsay objection.*" Fed. R. Evid. 106 (emphasis added). In 2023, Rule 106 was amended to explicitly state that it overcomes a hearsay objection.

The Second Circuit has "interpreted Rule 106 to justify the admission of previously excluded portions of partially received documents or statements only when necessary to explain the admitted portion, to place it into context, to ensure a fair and impartial understanding of the admitted portion, or to correct a misleading impression that might arise from excluding it." *United States v. Rivera,* 61 F.3d 131, 135–36 (2d Cir. 1995); *see also United States v. Lyttle,* 460 F. App'x 3, 7 (2d Cir. 2012) ("Rule 106 requires admission of a document when it is necessary for the fair and impartial understanding of the admitted portion of the document or a related document." (cleaned up)).

- **Legal Standards Pertaining to the State of Mind Exception (Fed. R. Evid. 803(3))**

Rule 803(3) provides that the following is not excluded by the rule against hearsay: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will."

The critical question for admissibility under the state of mind exception is whether the statement reflects the declarant's "then existing" state of mind as opposed to a statement of memory or belief to prove the fact remembered or believed. *United States v. Cardascia,* 951 F.2d 474, 488 (2d Cir. 1991) ("The determination of whether a statement falls within the state of mind exception requires a predicate finding as to whether the statement relates to a then existing state of mind or to a past memory or belief offered to prove the fact remembered or believed."). Relevant statements falling within the parameters of Rule 803(3) are "*categorically* admissible,

even if they are self-serving and made under circumstances which undermine their trustworthiness." *United States v. Lawal*, 736 F.2d 5, 9 (2d Cir. 1984) (emphasis in original) (statements that defendant was angry at person who had given him packages when it was suggested to him that they might contain narcotics should have been admitted under Rule 803(3)).

The Second Circuit has found reversible error in refusing to admit a defendant's statement reflecting his then existing state of mind. *See United States v. DiMaria*, 727 F.2d 265, 271 (2d Cir. 1984) (reversing where district court excluded a defendant's spontaneous statement to law enforcement that "was a statement of what he was thinking in the present"); *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (finding exclusion of defendant's statement reflecting his belief that cooperator brought government agent to him, offered under FRE 803(3), to be reversible error). Indeed, defendants' statements of their then existing state of mind are particularly critical to the defense because they often are "the only direct evidence of their internal mental state." Faustino S. Galante, *"The Gun's Not Mine!": The Admissibility of Defendants' Exculpatory Hearsay Statements Under Federal Rules of Evidence 803(2) & (3)*, 93 Fordham Law Review Online, 99, 106 (2024).

- **The Defense Exhibits Are Admissible on Both Grounds**
  - **DX 8790 (GX 1374) (Ex. 1).**

This is a group chat with Dragonfly in which Haseeb Quereshi, a partner at Dragonfly, sends an article by Elliptic about proceeds from the Harmony Horizon hack being traced to the Lazarus Group even though they used Tornado Cash (which should have broken the chain of attribution). Mr. Quereshi asks how Elliptic did that, and Mr. Storm provides a few guesses and ends with, "I'm glad those f*ckers are detected."

Mr. Storm's statement, "I'm glad those f*ckers are detected," reflects his then existing state of mind. Specifically, his statement reflects his then existing anger with the Lazarus Group and, importantly, that he did not intend to help them conceal their illegal proceeds. Because the statement goes directly to his emotion and intent at the time the statement was made, it should be admitted pursuant to Rule 803(3).

Moreover, the whole chat should also be admitted pursuant to Rule 106. The government had proposed admitting this exhibit in its entirety before cutting portions of it, including the statement from Mr. Storm above. The parties negotiated at length over rule-of-completeness issues, and the government ultimately decided not to admit any portion of the exhibit. However, the government did introduce other chats where the founders communicated with Dragonfly regarding the Lazarus Group's use of Tornado Cash. *See, e.g.*, GX 1367, GX 1368, GX 1369, GX 1372, GX 1376. The admission of the chat contained in DX 8790 is necessary to provide context and to prevent the other chats from being misleading. The other chats the government has introduced may give the impression that Mr. Storm's intent was to support the Lazarus Group's and other bad actors' undetected use of Tornado Cash. It is critical that Mr. Storm be allowed to introduce this chat to correct that misleading impression.

- **DX 8789 (GX 1345) (Ex. 2).**

This is a one-on-one chat between Mr. Quereshi and Mr. Storm. The government admitted the first page of this chat as GX 1345, where Mr. Storm asks, "What do you think of valuation of $12.5 MM for Tornado?" On page 5 of that chat, Mr. Storm states, "here is what I don't understand, according to FinCEN we are not breaking any law so far," with a link to the 2019 FinCEN Guidance. He and Mr. Quereshi then discuss other mixers and how Tornado Cash is distinguishable because the other mixers are custodial, have direct profits, and advertise on the "dark market." Mr. Quereshi then writes on page 7, "I agree, which is why we want to invest. We are convinced what you guys are doing is legal."

Mr. Storm's statements regarding the legality of Tornado Cash and the distinctions between Tornado Cash and other mixers are in present tense and clearly represent his state of mind at the time the statements were made. The later statement by Mr. Quereshi, "I agree, which is why we want to invest. We are convinced what you guys are doing is legal" is similarly a statement of Mr. Quereshi's then existing state of mind. Both statements should be admitted pursuant to Rule 803(3).

The statements in DX 8789 should also be admitted under Rule 106. The government has admitted the bare question from Mr. Storm about the valuation of Tornado Cash, but in fairness, the remainder of the chat, discussing the distinctions between Tornado Cash and other cryptocurrency mixing protocols and services ought to be considered. Both Mr. Storm's and Mr. Quereshi's views on the distinguishing features of Tornado Cash bear directly on the valuation question and Dragonfly's decision to invest in Tornado Cash.

- **DX 8792 (GX 2075) (Ex. 3).**

This is a chat between Bitmart and the Peppersc founders, including Mr. Storm, in which Bitmart states it would like to discuss the exploits from the Bitmart hacking incident. Mr. Pertsev replies, "You can try reaching out to centralized service providers such as Infura, Etherscan, etc where they track user's data (IP addresses and such). Our company does not have any ability to affect any change or take any action with respect to the Tornado Cash protocol – it is a decentralized software protocol that no one entity or actor can control. For that reason, we are unable to assist with respect to any issues relating to the Tornado Cash protocol." Later in the chat, Mr. Storm suggests that Bitmart try Chainalysis and provides a link to the Chainalysis website. The government had initially proposed just admitting the first portion of the chat, and the defense sought admission of the whole chat under the rule of completeness. Before this Court ruled on the issue, the government decided not to admit any portion of GX 2075, but it admitted other communications between Bitmart and the founders. *See* GX 1005, 1006, 1009, 1011.

Mr. Storm's suggestion that Bitmart try Chainalysis and his providing a link to the Chainalysis website reflects his then existing intent to assist victims of hacks to the extent he could— specifically here, that Bitmart use Chainalysis to try to trace their assets after they had already

been deposited into the immutable Tornado Cash pools. It should be admitted pursuant to Rule 803(3).

DX 8792 should also be admitted pursuant to Rule 106. The other communications introduced by the government all give the impression that Mr. Storm and the other founders offered no assistance to Bitmart's efforts to recover its assets. Mr. Storm's suggestion to Bitmart of using Chainalysis corrects that misleading impression.

- **DX 8793 (GX 2090-1) (Ex. 4).**

This is a Medium post entitled, "Tornado.cash compliance," written by the founders on June 3, 2020. In it, the founders explain how the Tornado Cash Compliance Tool works and why the developers created it. The first line of the post reads: "Maintaining financial privacy is essential to preserving our financial freedom. However, it should not come at the cost of non-compliance." The government has admitted other Medium posts by founders that explain various features and updates to the Tornado Cash protocol. *See* GX 1901 and GX 1904. Both of these exhibits include references to the article reflected in DX 8793, and include a screenshot and an excerpt of the first line that only reads: "Maintaining financial privacy is essential to preserving our financial freedom. However, i…" *See* GX 1901 at 10 and GX 1904 at 14. Without the full context of the article reflected in DX 8793, the jury could be misled about the contents of that article or otherwise confused about the authors' position with regard to Tornado Cash and compliance vis-à-vis financial privacy. DX 8793 should thus be admitted pursuant to Rule 106.

- **DX 8794 (USAO_00004580) (Ex. 5).**

This is an exchange among the Peppersec founders, including Mr. Storm, in the Bablo Peppersec chat in October 2020. In it, Mr. Storm wrote: "I don't fucking like when we are getting shit on as if we are criminals of some sort," to which Mr. Semenov responded: "But we have no way to forbid scammers from using the service. What can be done is to attract more regular users." Mr. Storm responded: "I understand all of that, Roman . . . I am just concerned. . . . It's unfortunate that people don't understand what we want to do." Mr. Storm also wrote: "Yeah, I get scared seeing how there is 1,000,000 going a day." Mr. Semenov wrote: "Tornado—it should be where many Ethereum users keep the dough by default. It must be cheap and convenient for that." Mr. Storm responded: "I agree. And legal. So that people wouldn't think that it's some kind of damned mixer. So that the reputation would be clean."

The government relies extensively on other portions of the Bablo Chat. *See* GX 2031-T, GX 2032-T, GX 2034-T, GX 2036-T, GX 2037-T, GX 2038-T, GX 2039-T, GX 2040-T, GX 2041-T, GX 2043-T, GX 2044-T, GX 2047-T, GX 2048-T, GX 2049-T, GX 2050-T, GX 2052-T, GX 2053-T, GX 2055-T, GX 2058-T, GX 2059-T, GX 2060-T, GX 2061-T, GX 2062-T, GX 2063-T, GX 2064-T, GX 2067-T, and GX 2069-T. The government's selective admission of portions of the Bablo Peppersec chat may give a misleading impression that Mr. Storm sought to encourage or benefit from misuse of the Tornado Cash protocol by bad actors.

Hon. Katherine Polk Failla<br>
July 27, 2025<br>
Page 6 of 6

The portion of Bablo Chat excerpted in DX 8794 corrects this misleading impression by reflecting the founders' state of mind at the outset of the charged period, in October 2020—specifically, that Mr. Storm did not appreciate the perception that the developers of Tornado Cash were criminals and that he and his co-founders sought to develop a cheap (or free), convenient, and "legal" protocol where most Ethereum users would keep their ETH. DX 8794 should thus be admitted pursuant to Rule 106 over any hearsay objections. Furthermore, as the founders' statements reflect their state of mind at the time of the exchange, they should be admitted pursuant to Rule 803(3). Further, Mr. Storm's frustration with the perception that the developers of Tornado Cash were "criminals of some sort" and his statement that he is "get[s] scared" seeing the volume of transactions should be admitted as evidence of his emotional condition and mental feeling under Rule 803(3). DX 8794 should be admitted.

\*\*\*

For all these reasons, this Court should grant this motion.

Respectfully submitted,

*[signature]*

Brian E. Klein
Keri Curtis Axel
Becky S. James
Kevin M. Casey
Viviana Andazola Marquez
Waymaker LLP

-and-

David E. Patton
Christopher Morel
Hecker Fink LLP

*Attorneys for Roman Storm*