P845stoF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          23 Cr. 430 (KPF)

ROMAN STORM,

               Defendant.           Jury Trial
------------------------------x

                                New York, N.Y.
                                August 4, 2025
                                9:32 a.m.

Before:

                HON. KATHERINE POLK FAILLA,

                              U.S. District Judge

                      APPEARANCES

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
BY:  NATHAN M. REHN, ESQ.
    BEN ARAD, ESQ.
    BENJAMIN A. GIANFORTI, ESQ.
    KEVIN G. MOSLEY, ESQ.
    TARA M. LA MORTE, ESQ.
    Assistant United States Attorneys

WAYMAKER LLP
    Attorneys for Defendant
BY:  BRIAN E. KLEIN, ESQ.
    KERI CURTIS AXEL, ESQ.
    KEVIN M. CASEY, ESQ.
    VIVIANA ANDAZOLA MARQUEZ, ESQ.

    -and-

HECKER FINK LLP
    Attorneys for Defendant
BY:  DAVID E. PATTON, ESQ.
    CHRISTOPHER MOREL, ESQ.

P7V5stoF                        Deliberations

(Trial resumed; jury not present)

THE COURT:  Just to complete the record, I want to note that at 9:32 this morning or thereabouts, Court Exhibit 13, which was my transmittal note plus the transcripts went to the jury.  We have now received, timed 10:24 a.m., the following jury note which has been marked as Court Exhibit 14.  It reads:  Is cooperation with law enforcement (foreign) Mandatory/required without a subpoena?  Signed by the foreperson.

I am certainly interested in the parties' thoughts but my overriding feeling is that this really isn't something I should be instructing them on.  This is not -- we didn't talk -- it is not part of the charge in this case, we didn't have extensive evidence on it.  I don't think it is relevant to issues in this case and I think the answer should be to repeat to them that they should focus on the evidence that was introduced and the charges that I did give.  But, let me please hear from the parties.  Mr. Rehn?

MR. REHN:  I think that's our view as well, your Honor.  I don't think that --

THE COURT:  Can I have you closer to a microphone please, sir?

MR. REHN:  Yes, your Honor.

That would be consistent with our view, is just to remind them to focus on the evidence in the case and the

P7V5stoF                        Deliberations

instructions as previously given.  I don't think there is an answer to this question that presents itself that would be relevant to them.

THE COURT:  Because the short answer -- well, there is no short answer, that is the problem.  There are multiple law enforcement treaties with different countries and I don't even think you use a subpoena, I think you use an MLAT, and that varies with the country and I don't want to explain to them something I haven't worked on in years and don't know.

Mr. Patton?

MR. PATTON:  Your Honor, I would say that we actually do this there is a short answer to this which is just "no."  If they are referring to any obligations by Mr. Storm --

THE COURT:  But I don't -- sir, I will let you finish.  Go ahead.

MR. PATTON:  I know of no obligation for a private citizen to respond to any sort of foreign law enforcement request, certainly absent some sort of --

THE COURT:  Sir, please excuse me.

Is there evidence at this trial that a foreign law enforcement body approached Mr. Storm?

MR. PATTON:  Yes, your Honor.  The government put in at least one e-mail, there may be others --

THE COURT:  I see.

MR. PATTON:  -- from the Taiwanese requesting

P7V5stoF                         Deliberations

information of Mr. Storm.

THE COURT:  That's correct.  I'm sorry.

It is interesting, we each had a different reaction. I am thinking about Agent Dickerman.  I see.  You are saying as cooperation -- but I actually don't know that to be correct.  I don't know enough about foreign law to know whether there are countries for whom there would be an obligation to comply just based on a written request or something else.  I don't know foreign law enough to know that.

MR. PATTON:  I don't know how it would be possible that somebody could have some legal obligation certainly absent a subpoena of some sort but --

THE COURT:  Should I then write a clarifying note asking whether they're asking about a request -- because I thought it was cooperation among law enforcement bodies and you are correct, I understand why you thought it was cooperation with Mr. Storm.

Do I ask for the clarification?

MR. REHN:  Your Honor, I think that it would be better just to direct them to the instructions that have already been given.  I think that inviting further colloquy about this -- I actually don't think we agree with the defense that there is no plausible legal obligation if they receive a request.  We would have to investigate for a business of this nature what sort of obligations it would have under the law of a particular foreign

country and I think that would be inviting a whole side inquiry

into legal issues that aren't really directly represented in

the case.

THE COURT:  Mr. Patton, the problem that I have, as

was indicated by my answer to you is I don't know what the

answer is but the real issue is there is nothing in the trial

about his obligations so I am really reluctant to amplify the

record now.

MR. PATTON:  Well, I wouldn't want to amplify it, I

agree with that, so I am a little reluctant to delve further

and I do think this should be foreclosed.  We thought a "no"

would do that.  We could think about perhaps some language that

says something like, to be -- to address both sides of what

their concerns might be.  Law enforcement techniques are not

your consideration, nor is Mr. Storm charged with anything

relating to foreign governments.  As I've said to you before,

you should focus on the evidence or the lack of evidence and my

charges to you.

THE COURT:  No evidence in the record about whether

there was an obligation for him to comply.  Isn't the answer

there was no evidence on this issue at trial, nor was there a

charge on this issue, therefore I instruct you to focus on the

evidence at trial and my charges?

MR. PATTON:  I think that would --

MR. REHN:  I would be reluctant to say there was no

P7V5stoF                         Deliberations

evidence at trial.  One problem is it is unclear what the jury is talking about but I think we want to be careful of inviting a further colloquy along these lines but there is evidence that they received requests from law enforcement, both domestic and foreign, at times, and so I wouldn't tell them there is no evidence --

THE COURT:  What I am saying, there is no evidence at trial about whether cooperation with law enforcement was mandatory.  There is no evidence at trial on that.

MR. REHN:  That's correct, your Honor.

THE COURT:  There was no evidence at trial about whether cooperation with law enforcement -- with foreign law enforcement because that's what is or was mandatory.  I remind you of my instructions that you are to focus on the evidence that was admitted on this trial and my instructions on the law.

Is that acceptable?

MR. KLEIN:  One moment?

MR. REHN:  I think that the evidence of these requests, however, is something the jury can take into account when evaluating the state of mind of the defendant and I worry that that request situation would be an instruction for them not to consider that evidence.

THE COURT:  There is nothing in this record that suggested that it was mandatory for Mr. Storm to cooperate with law enforcement.  Is that not correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P7V5stoF                         Deliberations

MR. REHN:  That is correct, your Honor.

THE COURT:  That's the issue.  Not whether he received but whether it was mandatory for him to cooperate and I don't have an answer to the question of whether it was.  And, in fact, I'm not sure it was, and therefore I don't want them going down that rabbit hole of penalizing him for something that there is no evidence in the trial on it and I haven't instructed them on.

MR. REHN:  We don't disagree with that, your Honor. The evidence is still a piece of the picture as to the defendant's state of mind.  I feel that this instruction, without having that clarification, would be essentially to suggest that they shouldn't take into account this evidence.

THE COURT:  Let me say this.  Not to carry Mr. Patton's water for him but I bet he is going to become apoplectic if I were to add what you want me to add, which I don't want to add, which is, *I remind you, however, that this evidence could be used as indicative of his state of mind.*  I never said that it wasn't and I can remind them to consider the evidence that was admitted at trial and to follow all of my instructions own the law.  I'm not comfortable singling out the one that says you can consider it for this purpose because that is not what they're asking me for.  I know your concern, but I have to just tell them to follow the instructions on the law and to consider them in their entirety.

Am I not correct, Mr. Rehn, you want me to say it is true there is no evidence about whether cooperation with foreign law enforcement was mandatory.  However, you may consider this evidence as illuminative of his state of mind.  That's what you want.

MR. REHN:  I think to instruct in such a way is to suggest the evidence shouldn't be considered at all would be -- we could look at the language --

THE COURT:  But, sir, what I am saying is there is no evidence at trial on the specific issue of whether compliance with law enforcement was mandatory or required without any absence of a subpoena.  That's the issue.  That's it.  That doesn't take away anything else at this trial and let them come back with another question if they have -- if we have all misunderstood.

Mr. Patton?

MR. PATTON:  Your Honor, we are in agreement with that general approach.  We lost a little bit of track of what the exact wording would be, but.

THE COURT:  Let me see what I can do.  Hold on, please.  (Pause)

Counsel I offer you this:  Members of the jury:  We have received your note timed 10:24 a.m.  On the specific issue of whether cooperation with foreign law enforcement was required in the absence of a subpoena, no such evidence was

P7V5stoF                      Deliberations

admitted at trial, nor did I instruct you on this issue.

Instead, you are to consider only the evidence that was

admitted at trial and to consider my instructions on the law as

a whole.

          Mr. Rehn?

          MR. REHN:  A moment, your Honor?

          THE COURT:  Yes.

          Mr. Patton?

          MR. PATTON:  I think we are fine with that, your

Honor.

          THE COURT:  All right.

          MR. REHN:  One moment, your Honor?

          (Counsel conferring)

          MR. REHN:  Your Honor, I think that the concern that

we would have is that the way it is written now, because the

phrase "no such evidence" is sort of placed at the end of that

sentence, it could suggest that there was no such evidence

about sort of cooperation with foreign law enforcement, full

stop.

          THE COURT:  But --

          MR. REHN:  What I would suggest is that we say --

          THE COURT:  What, to invert the clauses that no such

evidence was admitted at trial on the specific issue of

whether --

          MR. REHN:  Instead of "no such evidence" we would say,

P7V5stoF                    Deliberations

we would suggest:  We have received your note timed 10:24 a.m. At this trial there was no evidence regarding whether cooperation with foreign law enforcement was required in the absence of a subpoena, nor did I instruct you on this issue.

THE COURT:  May I hear that again, please?

MR. REHN:  At this trial there was not evidence regarding whether cooperation with foreign law enforcement was required in the absence of a subpoena, nor did I instruct you on this issue.

THE COURT:  Mr. Patton?  It is a cosmetic issue.  They think it is clearer that way.

MR. REHN:  It is meant to just be for clarity purposes.

THE COURT:  I'm sorry?

MR. REHN:  Yes, the goal here is to just be a little more clear.

THE COURT:  Yes, because apparently my instruction wasn't clear enough.

MR. KLEIN:  Your Honor, if you can give us a minute? We are looking at this.

THE COURT:  Yes.

(Counsel conferring)

MR. PATTON:  Your Honor, we find your Honor's formulation just clearer.  The government's, I think, could lead to some confusion about that phrasing of the absence of a

P845stoF                        Deliberations

subpoena.  Our preference is for your Honor's initial formulation.

THE COURT:  I will go with my initial formulation.

Ms. Noriega, I am giving you the note, it is now timed 10:55 a.m., I will sign it, it is Court Exhibit 15.

I will step off the bench and we will see if there is a response from the jury.  Thank you.

(Recess pending verdict)

THE COURT:  Since last we spoke I received a note from the jurors timed 12:00 p.m.  It was marked as Court Exhibit 16 and it reads:  Can we be provided with the specific GX and DX text messages (all) #'s.

I sent back just a moment ago, at 1:05, Court Exhibit 17, which basically is a transmittal letter with the lists on which the parties had agreed.  But I was told by my deputy that there was a request to discuss issues of potential conflicts of time.  I'm here to talk about them with you.

Let me just say, and I say this trying to be as respectful as I can, one hour to respond to a jury note is not going to make them deliberate any faster.  It looks like you don't care when we take that much time.  I thought giving folks time would actually result in consensus but maybe next time I will come down and talk to you at the front end because I sat upstairs waiting to hear something resembling progress and got nothing.

What I can tell you on the conflicts front is this: We have a juror, I believe she is number -- Ms. Nelson has a mom who is turning 90 and there is a party for her tomorrow.  I don't know whether that is entering into the jurors' calculations in terms of the schedule for this week but I also know that my deputy was approached by juror no. 4, Ms. Hammond, who let her know that she absolutely cannot sit past the end of this week.  Therefore, my thought would be to tell them at some point, either by bringing them out or by you authorizing me to speak with them or I don't know how a note would work, we have talked about how a note would work.  As I said, you all set the schedule.  What I am going to ask, however, is all of you air out all of your scheduling issues for this week, and perhaps next, before you make any decisions about what days and times you are sitting.

I will also say I have a couple of matters Wednesday, Thursday, Friday, thinking that we might be done by then but I don't know that they can -- I don't know is the short answer. I did not think that you wanted me to tell them no, stay later, or no, you cannot break, or no, you can't come in late, but I will hear from you.  Maybe you hold a different view.

Mr. Klein, do you want to speak to this issue?

MR. KLEIN:  Your Honor.

THE COURT:  Sir.

MR. KLEIN:  It is unclear if the issue tomorrow means

they're not coming in but we think they should come in tomorrow at least --

THE COURT:  For part of the day.

MR. KLEIN:  I don't know when the birthday party starts, I'm not privy to any of that, but I can't imagine it is at 8:00 a.m. or 9:00 a.m.  So, we would ask that they continue to deliberate as much as they can each day.  Obviously they can set their end time but they do come in tomorrow.

THE COURT:  How would you like me to communicate that to them?  Do you want me to bring them out?  Do you want me to speak with them as you spoke with them on Thursday to let them know that they could go home at 3:00 because we didn't have the transcript cites ready?  I'm not sure what a note to them would look like and I don't really want to rush them right now.

Maybe at the end of the day -- I don't mean to have a conversation with myself on the record of this trial but my concern is I don't want to rush them.  I don't want to cause them any concerns.  However, if they make a decision at 3:30, we're not coming in tomorrow, we will have missed the opportunity to tell them to come in tomorrow for part of the day.

So, that's the issue.  Do you authorize me to speak with them?  And if not, that's fine, I can bring them out here after their lunch and we can say to them, look, we wanted to talk to you a little bit more about scheduling and we can have

P845stoF                        Deliberations

them all in the room listening to me and they can have that as they decide their afternoons.

Mr. Klein?

MR. KLEIN:  Maybe Ms. Noriega could ask juror no. 10 or 11 what time she might need to leave tomorrow and that way we can get a sense of that first and then we can make a decision because maybe that information will steer our conversation.

THE COURT:  Ms. Noriega, has she told you previously?

THE DEPUTY CLERK:  She has not, Judge.

THE COURT:  She has not.

Are you asking for Ms. Noriega to call her out of the lunch break?

MR. KLEIN:  I don't know how the best way to do that is, your Honor, but I think since you mentioned -- she had mentioned it and I remember during the jury selection it was an issue.  I thought it was in the evening or afternoon.  I don't remember the voir dire but I do remember there being an issue with one juror on this Tuesday but I didn't think it would stop them from deliberating or to be here if there was still trial.

THE COURT:  I think we learned about it after the jury was picked.

MR. KLEIN:  I remember learning about it at some point.

THE COURT:  OK.  Mr. Rehn or Mr. Arad?  I'm sorry, I'm

P845stoF                     Deliberations

not sure who is speaking on this issue.

MR. REHN:  Your Honor, I think we would be inclined to sort of let the jury continue its deliberations for now and maybe reassess at the end of the day.

THE COURT:  But you just heard what I said, sir.  We will all be sad if they do not sit at all tomorrow.

MR. REHN:  We understand.  I just think there is not sort of an easy way to intrude upon them at the moment.

THE COURT:  Let me just push back, sir.

They're eating lunch right now.  This is the time.  If we are going to intrude, this is the time to intrude.  When I walked into the robing room I saw that Ms. Taylor, one of our jurors, was walking in the hallway.  She had declined our offer of the free food.  So, they're not deliberating.  At least they weren't when I came on the bench, so if we are going -- we could do it right now, we are going to lose them in about 15 minutes.

Mr. Klein?

MR. KLEIN:  I would do it now then, your Honor, now that we know that.

THE COURT:  Mr. Rehn?

MR. REHN:  That's fine, your Honor.

THE COURT:  OK.  Then Ms. Noriega, you are authorized to speak with Ms. Nelson about her mom's party schedule and to get back.

P845stoF                          Deliberations

Now is Ms. Noriega just -- Mr. Klein, thank you.  Is Ms. Noriega just asking about the schedule for the party or is she also asking whether the jurors have agreed about a sitting time tomorrow of Ms. Nelson or just ask about the party?

MR. KLEIN:  I would just ask about the party at the moment, your Honor.

THE COURT:  All right.  Ms. Noriega, you are authorized to do that.  I'm going to step off the bench while she does that and we will come back.  Please stay local.  Thank you.  Unless there is anything else we have to talk about?  That's a no.  Thank you.

(Recess pending verdict)

THE COURT:  As with several things during this trial -- oh, I lost Mr. Klein.  He'll come back.

MS. AXEL:  He just stepped out to the rest room, your Honor.

THE COURT:  That's fine.  Thank you.

It is sort of the worst of all worlds in that there is a -- this is on the record -- there is a pedicure scheduled for 10:00 a.m. and then a dinner scheduled for 4:00 p.m., however Ms. Nelson has not told the other jurors about either thing so I'm going to ask you to give me a bit of indulgence for just a moment, please, after I let Mr. Klein sit down.

Mr. Klein, the birthday festivities span morning and afternoon so let me just offer some thoughts, if I may, and

then I will solicit your thoughts.

We let the jury have a day off for a juror's cousin funeral.  We let them have a day off for a juror's preplanned trip to Puerto Rico.  One could argue that not giving her the day off might cause some dissention, however there is a difference here which is that we did not know about these conflicts until after she was selected so I can say that. Although, again, you are risking the ire of the jury on this point.

My deputy and I were talking before I came out on the bench and there are several thoughts that we have.  My deputy believes, and I agree with her, that the best way of messaging this to the jury is for me to go into the room and not to bring them out because they are in a -- they're in a space right now where they're deliberating and to drag them out here is going to mess that up.  It is about the end of their lunch period.  I can go in there and I can say to them that while we are listening to them about scheduling and we have, I have conflicts coming up in terms of cases that I will be hearing, I have a sentencing later in the week, that I believe from conversations with my deputy that some of the jurors may have scheduling conflicts, and so what I would like them to do this afternoon is to talk about these conflicts, understanding that because they're deliberating we would like them to sit for as long as they possibly can each day and we do want them to

P845stoF                          Deliberations

sit -- I do want them to sit for some portion of every day.

And so, in terms of -- I think the pedicure has got to go and I am so sorry to say that and I don't want to pick on her, but I believe I need to say to them I need them to sit for at least half a day every day this week but I also would like -- they can start earlier, they can stay later, but I need them to sit for at least half a day and I want them, as they think about this week, I want them to talk to each other and to let us know, as well, if there are scheduling conflicts.  And I can preface it by saying I have my own but that's -- my deputy who, again, is very good with understanding jurors, believes that it is better for me to go in and speak to them, just as I have been speaking to you now about these issues and that's what I'm proposing but I will listen to both of you.

By the way, if both sides say:  *No, Failla.  It's fine, let them have tomorrow off*, I will listen to that, too, but at some point juror no. 10 is going to turn into a pumpkin at midnight and we -- juror no. 4, excuse me, Ms. Hammond, thank you -- and we will have to start the whole process again.

So, Mr. Rehn, from your team, what is your position?

MR. REHN:  We are fine with the Court's proposal, your Honor.

THE COURT:  Thank you.

Mr. Klein?

MR. KLEIN:  Same for the defense, your Honor.

P845stoF                          Deliberations

THE COURT:  Thank you.  I will try and do it now. Excuse me, please.

THE DEPUTY CLERK:  All rise.

(Recess pending verdict)

THE COURT:  Despite telling us that she wasn't going to tell the other jurors, Ms. Nelson did tell the other jurors and they all agreed that she -- they would not sit tomorrow, but I told them that that's actually not a possibility, that they have to sit for at least half a day, so we have a sad but not devastated Ms. Nelson.

The jurors have talked.  They're planning, right now, if everyone's schedule can do this, to sit from 8:30 to 12:30 tomorrow and then let her go to have the rest of the afternoon with her mom.  They were -- it was very nice to see a number of jurors being very supportive and willing to bend their own schedules for her.  They're also talking now, they said they were thinking about staying until 4:00 this afternoon but now they might stay a little bit later.

I have no sense, nothing to indicate that we are getting a verdict today, let me just say that.  They are a very deliberate deliberative jury and they're going to take what time they need so that's what I'm telling -- I have to additional things to tell you.

I did not want to stay in the room as they were discussing everyone's schedule so I left and they will tell us

P845stoF                      Deliberations

later today whether they are staying longer or not, but tomorrow the plan is 8:30 to 12:30.  We mentioned to them there certainly will be marshals coverage, we mentioned if they had a note at 8:35 they might have to wait a bit for the reporter but we will be here.

          Anything else to bring to my attention -- I have kept you from lunch long enough, it would seem.

          MR. KLEIN:  Nothing from the defense, your Honor.

          THE COURT:  Thank you, sir.

          Mr. Rehn, anything else?

          MR. REHN:  Nothing from the government, your Honor.

          THE COURT:  We will all try and grab some lunch. Thank you very much.

          THE DEPUTY CLERK:  All rise.

          (Recess pending verdict)

P845stoF                         Deliberations

A F T E R N O O N   S E S S I O N

3:45 p.m.

THE COURT:  Greetings, friends.  Please, be seated.

We have received a note from the jury at 3:30 p.m.  It is marked, I believe Court Exhibit 18 is the next one in order. If not, I will re-number them later but I think it is 18.  It reads, as follows:  Hi Judge.  Today we will retire at 4:00 p.m.  We have agreed to the following schedule:  Tuesday, in at 8:30 to 12:30 p.m.; Wednesday, in at 8:45 to 3:45 p.m.; Thursday, in at 8:45 to 4:45 p.m.; Friday, in at 8:45 to 1:00 p.m.

Before I came out here I thought a lot about the right way to respond to this note.  Candidly, I am fine with Thursday, a little less fine with Friday, but I decided to do this.  My proposal is to simply say, Court Exhibit 19.  Members of the jury, we have received your note with a proposed schedule for the remainder of this week.  We will see you at 8:30 a.m. tomorrow.

I am reserving the right to revisit Friday depending on what happens on Thursday but I'm not interested, at this time of day and given all the discussions about schedules of having them obsess about schedules or the possibility of me not letting them have their preferred schedule.  So, I hope the parties agree with me and, if so, I will send this note back right now so that they are aware that we will see them

P845stoF                    Deliberations

tomorrow.  But let me hear from the parties.

          Mr. Rehn.

          MR. REHN:  That's fine with the government, your Honor.

          MR. KLEIN:  Same with the defense, your Honor.

          THE COURT:  OK.  They must really love the environs in the jury room or the Mio Pane food.  Who is to say.  But I will send this back to them now.  Might as well stay for 10 minutes in case we get anything else and I will let you go for the day.

          Anything else we have to address?

          MR. KLEIN:  Nothing from the defense, your Honor.

          MR. REHN:  Nothing from the government, your Honor.

          THE COURT:  I thank you all for your patience today. I will see you all tomorrow, apparently at 8:30.

          Take care, everyone.

          (Adjourned to August 5, 2025, at  8:30 a.m.)