P855sto1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                          23 Cr. 430 (KPF)

ROMAN STORM,

              Defendant.            Jury Trial
------------------------------x

                           New York, N.Y.
                           August 5, 2025
                           8:30 a.m.

Before:

                HON. KATHERINE POLK FAILLA,

                           U.S. District Judge

APPEARANCES

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
BY:  NATHAN M. REHN, ESQ.
    BEN ARAD, ESQ.
    BENJAMIN A. GIANFORTI, ESQ.
    KEVIN G. MOSLEY, ESQ.
    TARA M. LA MORTE, ESQ.
    Assistant United States Attorneys

WAYMAKER LLP
    Attorneys for Defendant
BY:  BRIAN E. KLEIN, ESQ.
    KERI CURTIS AXEL, ESQ.
    KEVIN M. CASEY, ESQ.
    VIVIANA ANDAZOLA MARQUEZ, ESQ.

    -and-

HECKER FINK LLP
    Attorneys for Defendant
BY:  DAVID E. PATTON, ESQ.
    CHRISTOPHER MOREL, ESQ.

P855stoF                           Deliberations

(Trial resumed; jury not present)

THE COURT:  Good morning, everyone.  Thank you, and please be seated.

We received a note this morning that was timed 9:24 a.m. and it reads, as follows:

Hi Judge.  We need clarification on this question.

1.  Does the sanctioned wallet include the intermediary wallets or just the specified wallet?

2.  Does the sanctioned -- which I believe should be sanctions -- follow the intermediary wallets?

So, here is what I started sketching out which I would like to present for your consideration and edits:

Members of the jury, we have received your note of 9:24 a.m.  I refer you back to pages 52 to 54 of the charge. In response your specific questions, no. 1, only the -- and I am just going to call it the 0x0 address, was placed on the SDN; and no. 2, I refer you to the charge which discusses the evidence at trial regarding what entities were placed on the SDN list during the relevant time period.

Mr. Arad, what is wrong with that?

MR. ARAD:  Your Honor, may I have just one moment to confer?

THE COURT:  Of course.

MR. ARAD:  Thank you.

(Counsel conferring)

THE COURT:  Just to be transparent, counsel, with respect to question 2, there is not really a yes or no answer I can give to question 2 because the issue is the charge is providing assistance or goods or services so I don't feel comfortable answering that yes or no.  The first one I felt comfortable giving an answer, the second one I don't, because I don't think it admits a yes or no answer.

All right, Mr. Arad.

MR. ARAD:  The government has some concern that the nature of these questions suggests the jury is hyper-focused, perhaps, on certain questions that don't have yes or no answers or to which the answers are already included in the Court's previous instructions, and so in the interest of keeping the answer as short and sweet as possible in a way that will focus the jury on the relevant issues, the government would propose something along the lines of in response to your questions, the 0x0 address and the Lazarus Group were placed on the SDN list, and I refer you to the charge which discusses the evidence at trial, and so on exactly as your Honor has written it, without making specific reference to this is the answer to question 1 and this is the answer to question 2, which I think will continue to focus the jury on that issue.

I would also --

THE COURT:  Sir, let me just say though, they didn't ask about the Lazarus Group which is why I specifically did not

P855stoF                          Deliberations

speak to the Lazarus Group.  They've asked about these addresses.  And by referring them to pages 52 to 54 of my charge, of necessity they will see the Lazarus Group.  I don't feel comfortable calling it out to them and calling out to them an answer to a question they haven't asked.

MR. ARAD:  I understand that, your Honor, so could I suggest, in the alternative, that the Court refer them, as you have already thought to do, to pages 52 to 54 of the charge, and then point them also specifically to the last paragraph of the section preceding the conscious avoidance section in the charge which directly addresses the question of what has been designated and what has not.

THE COURT:  But, sir, the whole point of my charge is not -- and I tell them repeatedly, that they are to focus not on one part of the charge but on the whole of the charge, so it would seem to me that telling them to focus on the whole of the charge is the way to go, rather than telling them please focus on the last paragraph.

So, once again, I'm trying -- I appreciate that each of you discerns something from the questions that they're asking and you are understandably trying to read tea leaves. I'm trying to answer the questions that they've given me without either favoring one side or the other, or pointing out something that hasn't been asked.  So, I do appreciate what you are saying.  I'm going to decline that suggestion.  I will

P855stoF                        Deliberations

consider your other suggestion about not pointing out

questions 1 or 2.  I don't want to cut you off, sir, I do want

to hear from the other side, but is there something else you

want to say?

MR. ARAD:  I just wanted to say that that makes sense,

your Honor.  I completely understand that.  I just want to make

clear one animating reason for our suggestion to specifically

point the jury to that particular paragraph, is that it

addresses the entirety of the question of what's been

designated and so I don't believe that it would run the risk of

focusing them on the subject of what's been designated on one

particular part of the instruction versus another.  Rather, the

IEEPA instruction is somewhat long and complicated, as it had

to be, because it is a complicated charge.

THE COURT:  I beg your pardon, sir.  It is three

pages.  It is actually way shorter than all of my other

charges.  I found it the least complicated on the bunch.  You

and I may differ on the point.

MR. ARAD:  I agree with that, your Honor, and yet on

this specific question, because the Court is trying to answer

the specific question the jury asked which is about what has

been designated and what hasn't, there is a totality of not

even four lines that fully addresses that question.  And so, I

do think that it would be clearer for the jury to just point

them to that particular part of the jury instruction rather

P855stoF                         Deliberations

than have them read the whole thing and figure out for themselves what addresses their question and what does not.

THE COURT:  All right.  Thank you.

May I have a representative from the defense speak to this issue?  Mr. Patton, thank you.  And please give me a moment to get myself ready.  Thank you, sir.

MR. PATTON:  We think that the answer to both questions is "no."  With respect to the second question, we do think they are asking, it says "does the sanctioned."  We think that that is referring again to the sanctioned wallet, that "does" suggests that and "the sanctioned" suggests that.

I will say, if your Honor disagrees with us about simply answering it that way, we are OK with the Court's initial formulation just with the caveat for the record that obviously your Honor overruled us on various objections to the instructions on this count and we just don't want to, by agreeing with your Honor's formulation, we don't want to be seen as waiving those objections, we still stand by those objections.

THE COURT:  Do you wish to speak to the government's suggestion that I answer the question without specifying in response to question 1 and in response to question 2?

MR. PATTON:  I actually think your Honor's initial formulation makes sense.

THE COURT:  Mr. Patton, please hold on.

P855stoF                    Deliberations

(Pause)

THE COURT:  Late breaking news.  We have another note.  It is not a "we have a verdict note," it is another request for information.  Let me please mark it as Court Exhibit 21 while I am talking to you.

Mr. Patton, I promise you that I will let you finish your thought in just a moment.  I want to read this to you so you can keep this in mind:

Hi, Judge.  Can we get the transcripts and exhibits for Mr. Lopez to prove venue?

Ms. Sebade, you are up.  And I'm sorry, someone from the defense team?  While we are having this discussion, can I ask someone from the defense team to work with Ms. Sebade or separately to get these exhibits and these transcripts together.

MR. KLEIN:  Yes, your Honor.

THE COURT:  Thank you.  Is it Ms. Andazola Marquez?

MR. KLEIN:  Yes, your Honor.

THE COURT:  Thanks you.  Thanks in advance.

Ms. Andazola Marquez, may I understand that you are coordinating with Ms. Sebade right now?

MS. ANDAZOLA MARQUEZ:  Yes, your Honor.

THE COURT:  I thank you very much for doing that.

I am putting that to the side and I can add it to my other response that, yes, we are getting this, or hang tight,

P855stoF                    Deliberations

or continue deliberating while we do it.

Mr. Patton, did I get the entirety of your thoughts with respect to Court Exhibit 20, which was basically you want me to break it out, you don't want me to not break it out.

MR. PATTON:  Correct, your Honor.

THE COURT:  However, you just want me to say:  "No." "No."  Yes, not doing that, sir, so your least worst option is the proposal that I gave.

MR. PATTON:  Correct, your Honor.

THE COURT:  All right.

Mr. Arad, anything else, sir?

MR. ARAD:  No, your Honor.

THE COURT:  Thank you.

THE COURT:  Thank you.

I am going to give the response that I previewed to you.  I will prepare it in the back, I will bring it out to you, and then we will get it to the jury as quickly as possible.  I will add to it that we will also be getting the exhibits and transcript together.

Thank you very much.

THE DEPUTY CLERK:  All rise.

(Recess pending verdict)

THE COURT:  Thank you.  Please, be seated.  I understand counsel has proposed language.

Mr. Arad, I will begin with you.

P855stoF                    Deliberations

MR. ARAD:  Thank you, your Honor.

With respect to the question of sanctions, the proposed note states, in answer to question 1, I instruct you that only the specified wallet, the 0x0 address was placed on the SDN list.  This statement, on its own, suggests the exclusion of everything other than that wallet and I don't think there would be any harm in avoiding any risk of that by simply saying I instruct you that the 0x098 address was placed on the SDN list.  That way they ask, Is it this wallet?  Is it some other wallet?  And the answer is it is this wallet.  But we don't have to say, to the exclusion of everything else, which really could lead to the confusion that it is to the exclusion, for example, of the Lazarus Group.

THE COURT:  But, sir, the only question was as between the specified wallet and the intermediary wallets what was placed on the sanctioned list.  They're not asking about Lazarus.

MR. ARAD:  That's true, but our answer would answer their question entirely.  It is not like you would leave any part of the answer on the table.  All we would be doing is minimizing the risk that they read beyond even the question that they asked in the answer, which is possible.

THE COURT:  I will consider that.  Not making promises.

Other issues, sir?

P855stoF                        Deliberations

MR. ARAD:  Yes, your Honor.

THE COURT:  Yes.

MR. ARAD:  With respect to venue, we of course agree to provide the transcript and exhibit numbers as the jury asks. We would ask that the same way that the Court is referring the jury back to the jury instructions on the sanctions issue, it do so with respect to venue as well, that's pages 58 to 59; and also that the Court remind the jury that it is not to place undue emphasis on any one piece of evidence but to consider the evidence as a whole.  And the reason for that is that the way the question is worded with the "to prove venue" at the end suggests that that is the evidence to prove venue when, in fact, there was other evidence to prove venue.  And as with the sanctions issue, this proposed answer would completely address the questions asked by the jury and just avoid any risk of the jury misunderstanding anything else.

I have specific language that we have drafted, if that would be helpful for the Court.

THE COURT:  I will hear you but I'm not necessarily accepting it.  But, go ahead.

MR. ARAD:  OK.  So, the specific language on venue, your Honor, would begin, after your Honor's proposed note which says with respect to your note regarding venue evidence, I instruct you again that you are to consider all the evidence and not place undue emphasis on any particular piece of

P855stoF                        Deliberations

evidence.  I also refer you to pages 58 to 59 of my charge which discuss venue.  We are working on the transcript and exhibit numbers you requested and will provide them shortly. And then, as your Honor wrote, anything to the effect of we appreciate your patience as we do so.

THE COURT:  All right, Mr. Patton, you disagree with both?

MR. PATTON:  Yes, your Honor.

THE COURT:  Why?

MR. PATTON:  First, if anything, as we noted the first time around, with respect to the sanctions note, they are, I think, very clearly asking about the wallet, so to go beyond that we have already expressed our position to the Court that really it should be a "no" and a "no."  We think the Court is already going beyond that with the response to the second question but to go beyond that still we think is problematic. They have an answerable, fairly narrow question about the wallets.

With respect to venue, again, we think they've asked a question -- they haven't really even asked a question.  They've asked for transcripts and exhibits and that's what should be provided.  We haven't gone beyond that.

THE COURT:  So are you not opposing my venue response?

MR. PATTON:  We are not.

THE COURT:  You are opposing my prior response or is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P855stoF                        Deliberations

it just a repeat of the challenge issue raised earlier?

MR. PATTON:  Given our earlier colloquy about the sanctions we are, and your Honor's position on it, we are OK with how your Honor has now drafted it.  We object to the government's suggestion just now.

THE COURT:  Let me do this, please.  I'm not changing the venue because it was just a request of transcripts and exhibits for Mr. William Lopez that was quite specific.  On the former, I will consider deleting the terms "only the specified wallet" but I want to look at that so I will come out with another version of this but I'm not changing it again.

Thank you.  I will be back as soon as I can.

THE DEPUTY CLERK:  All rise.

(Recess pending verdict)

THE COURT:  Please, be seated.

Mr. Patton, you didn't want the answer as I originally drafted it and you don't want it with the clause removed.  Your objection is preserved.

MR. PATTON:  Your Honor, I just want to say that the newer version just doesn't answer their question.  They're asking about whether the sanctioned wallet follows the intermediate wallets.

THE COURT:  That's the second question, sir.

MR. PATTON:  No.  The first question reads:  Does the sanctioned wallet include intermediary wallets or just the

P855stoF                        Deliberations

specified wallet.

THE COURT:  Yes.

MR. PATTON:  And we are not answering that question. The answer is it is just the specified wallet and now we are simply sort of giving a non-responsive answer that would lead them to speculate about what the answer actually is.  At least your Honor's initial version made that point clear which we think is a clear point.

THE COURT:  I understand, sir.  Your objection is preserved.  Thank you.

(Recess pending verdict)

THE COURT:  I have been advised there is an issue so let me speak to the parties, including Mr. Patton, who just stepped out.

MS. AXEL:  It is OK.  We have got it.

THE COURT:  OK.  Thank you.

Yes?

MR. ARAD:  Your Honor, after our last discussion we realized there is one additional issue that we wanted to raise.

THE COURT:  OK, sir.

MR. ARAD:  At the time of Mr. Lopez' testimony, the Court will recall the testimony essentially lined up certain communications between the defendant and folks at Dragonfly --

THE COURT:  Yes.

MR. ARAD:  -- with certain other evidence that the

P855stoF                     Deliberations

folks at Dragonfly, at least one of them was in New York at the time.  There was one chat that we did not include in that witness' testimony because it included KYC AML language that at the time was subject of an ongoing objection.

THE COURT:  Yes, sir.

MR. ARAD:  That had not been resolved.  The objection was later resolved in the government's favor.  Had that happened prior to Mr. Lopez' testimony, this exhibit would have come in with that.  Obviously what the jury is trying to do is understand that testimony and its import for the case. Excluding that chat from the list of exhibits that goes back to the jury would prevent them from doing that.  It is highly unlikely they would have anything to latch onto in order to know to pull that exhibit into their deliberations on Mr. Lopez' testimony so the government would ask that that exhibit be added to the list and the defense does not agree to that suggestion.

THE COURT:  Thank you.

Mr. Klein?

MR. KLEIN:  We object.  They asked for the testimony and exhibits of Mr. Lopez.  This is not one of the exhibits entered through him, it is not responsive to their request.

THE COURT:  Agreed.  Thank you.  It is not coming in. Thank you.

May I ask Ms. Sebade a different question, please?

P855stoF                          Deliberations

Thank you.

Ms. Sebade and Ms. Marquez, when we are talking about exhibits or identifying exhibits to the jury, were all of the exhibits that were shown to Mr. Lopez shown to him for the first -- were they introduced through him?  Let me ask the question a little bit better.

Were there any exhibits that he was shown that had been introduced through a prior witness.

MS. SEBADE:  I believe they were admitted through him but I can confirm.

THE COURT:  Counsel, you understand the point.  I believe anything that was shown to him, Ms. Marquez, do you agree, and can you do the same thing, double-check.

MS. ANDAZOLA MARQUEZ:  Yes, I will double check.

THE COURT:  The point is I get from our fantastic court reporters the list of what exhibit were admitted.  If he was shown something else that was admitted through a prior witness, I think that gets to be identified as well.

Does anyone disagree with that?

MR. ARAD:  The government does not disagree.

MR. KLEIN:  We don't dis agree.

THE COURT:  Thank you very much.

Then we have received the transcript and we are printing that out.  And we will, if we haven't gotten it already, we will hear from you very soon about your exhibits.

P855stoF                        Deliberations

Please advise my law clerk Mr. Kenny about the exhibits, and he will confirm with you, then I will just will write up the list.

Thank you very much.

THE DEPUTY CLERK:  All rise.

(Recess pending verdict)

THE COURT:  Mr. Arad, you have complaints about things other than my penmanship?

MR. ARAD:  It is not your Honor's penmanship, and I first I appreciate the Court's coming back out to hear this. We are trying to work through this as efficiently as possible.

The jury's note regarding Mr. Lopez' testimony and venue is unclear and I just wanted to explain exactly how the government comes to that conclusion.  The question asks can we get the transcripts and exhibits for Mr. William Lopez.  Now, if it had ended there, the clear import of the question would have been can we get the transcript and the exhibits that came up during Mr. Lopez' testimony but it didn't end there.  It added the words "to prove venue."  Now, that suggests that the jury is not looking for just what would have been conveyed by the question without those words added, it is looking for something more, which is what exhibits are relevant, at the very least, to Agent Lopez' analysis of venue which itself would be a narrower question of another possibility which is what exhibits are relevant, in general, to prove venue.

Now, rather than reading tea leaves and crafting an

P855stoF                         Deliberations

exhibit list that conforms to our interpretation of the tea leaves, the government would request that we send a note back to the jury asking for clarification of what exactly the jury is interested in, in light of the lack of clarity in its question.  And so, the clarification could be:  Is the jury requesting Special Agent Lopez' transcript and all exhibits relevant to his testimony?  All exhibits raised during his testimony?  Those would be two different things and it is just not clear from the text of the jury's question which of those things the jury is asking.

I would just add, your Honor, that the government would be seriously prejudiced if the jury thought it were analyzing everything relevant to Special Agent Lopez' testimony because, for every other chat and relevant date, the jury will have both a chat and either cell site data or an MX record to marry it to.  If the jury is looking only at the exhibit list that the Court has proposed to send back, it will find something missing and it won't have any indication of where else to find it, even though that evidence does exist in the record and would have existed in this part of the record, if not for the fact that there happened to be an ongoing objection by the defense at this point that happens to only be resolved later.

And so, to risk that prejudice to the government as a result of that happenstance does not seem the right course of

P855stoF                        Deliberations

action because it is not as though the government's proposed course of action here would prejudice the defendant in any way, it would just make sure that the jury sees all of the evidence on the issue of venue which is precisely what we have been trying to make sure the jury does all along.

So, that is why the government wanted to clarify and I appreciate your Honor's coming back out to hear that.

THE COURT:  Yes.  And normally I would let the defense speak but you are going to win the point so maybe you don't want to speak.

I read the note very clearly to ask for the testimony and exhibits of Mr. Lopez, and as I mentioned when I saw Mr. Arad and Mr. Patton in the robing room to discuss how much of the testimony was going back, I understood the "to prove venue" to be what the jury intended to use this information for.  My transmittal note, as the parties have now seen, simply says:  In response to your request of 9:50 a.m., I enclose six copies of the testimony of William Lopez.  Please be advised that the following exhibits were introduced during his testimony.  And then I list the exhibits.  I do not say this is the totality of the evidence on venue.  I do not say anything.

They have asked for testimony and exhibits of one witness for the purpose they've identified.  I don't think it is appropriate for me to ask them the question that their own jury note does not require.

P855stoF                        Deliberations

Ah.  My deputy advised me we have five copies, I will change it to five copies but we will send it in now.  I appreciate your concern, sir, but you are asking me to give an answer to a question they didn't ask and to a request they did not make and I will not do that.

Thank you, all.

THE DEPUTY CLERK:  All rise.

(Recess pending verdict)

THE COURT:  Good afternoon, friends.  Please, be seated.

We received a note that I have marked as Court Exhibit 24, at 12:14 this afternoon.  It reads, as follows:

Hi Judge.  We've made a lot of progress today.  We've reached a natural stopping point for today and are ready to retire for today.  We will meet tomorrow at 8:45 a.m.

That is the note.  My proposed response:

Members of the jury.  We have received your note timed 12:14 p.m.  We will see you tomorrow promptly at 8:45 a.m.  All of us involved in the trial extend our best wishes to Ms. Nelson's mother on her 90th birthday.

Any objections?

MR. KLEIN:  No, your Honor.

MR. ARAD:  No, your Honor.

THE COURT:  Waiting to see who would object to that.

All right, I will send that in.  I presume they will

P855stoF                    Deliberations

very promptly leave.  If you can give them a few minutes to go and then you are welcome to leave as well.

I thank you, as always, for being here and your patience, and I will see you at 8:45 tomorrow.

Thanks very much.

(Adjourned to August 6, 2025, at  8:45 a.m.)